# WILLIAM M. FLETCHER *vs.* NANNIE S. DIXON.

*Action for Negligent Operation of an Automobile which Frightened Horse—Use of Public Roads by Automobiles—Violation of Statutory Regulation as to Motor Vehicles—Instruction to Jury—Evidence—Pleading—Damdges—Opinion of Witness.*

The owners of automobiles have the right to use the public roads, exercising due care under the circumstances, but the Legislature has the power to prescribe the rate of speed at which they may be driven and to make other regulations.

Code, Art. 56, sec. 135, formerly provided that when a horse being driven on a highway, appears to be frightened at the approach of a motor vehicle, the person in charge of the latter shall go as far as practicable to the side of the road and remain stationary until the horse passes, in the meantime making as little noise as possible with the steam. A declaration alleged that while plaintiff was driving on a highway, when this statute was in force, her horse became frightened by defendant's automobile, that this was, or could have been, seen by defendant, and notwithstanding the same, defendant negligently failed, and did not go to the side of the road and remain stationary until plaintiff had passed, making in the meantime as little noise as possible, in violation of the statute, whereby plaintiff's horse became further frightened and ran away, without any negligence on her part, causing the injuries for which this action was brought. *Held*, that this declaration states a good cause of action and a demurrer thereto was properly overruled.

In an action where the declaration relied wholly upon defendant's neglect to comply with the above mentioned statute, a prayer is erroneous which instructs the jury that the plaintiff is entitled to recover if they find that her horse was frightened and caused to run away by defendant's automobile when operated by him on the street, and that the injury might have been avoided by the exercise of ordinary care on the part of the defendant, unless the plaintiff was guilty of contributory negligence. Defendant's prayers referred to the pleading, and this prayer of the plaintiff does not base her right to recover upon any of the grounds relied on in the declaration. The defendant would not be liable merely because his automobile frightened plaintiff's horse.

In such action, a prayer is proper which instructs the jury that the plaintiff is entitled to recover if they find that while she was driving on a street, using due care, the defendant's automobile approached in the middle of the road, that the defendant could have seen that plaintiff's horse was frightened by it, and, notwithstanding, defendant continued

to run his automobile in the middle of the street towards the horse, and did not go to the side of the road, or slacken speed, whereby her horse became frenzied and ran away and threw plaintiff out.

That there was evidence in the case that after defendant was aware that plaintiff's horse was frightened by his motor, he did not go to the side of the road and remain stationary, and that this violation of the statute may have caused the injury complained of. Consequently defendant's prayer asserting there was no legally sufficient evidence to entitle plaintiff to recover, should not be granted, nor should his prayer suggesting .that even if he had complied with the statute, plaintiff's horse would have run away.

That there was no such conduct on the part of the plaintiff as amounted to contributory negligence as matter of law, and that this question should be left to the jury.

That since the said statute requires the driver of an automobile to go to the side of the road and remain stationary when a traveller's horse has become frightened, a prayer in this action is misleading which instructs the jury that the owner of an automobile has the same right as the owner of other vehicles to use the highways and like them, he must exercise reasonable care and caution for the safety of others.

In an action to recover for personal injuries caused by defendant's negligence, it is error to instruct the jury that in estimating damages they may consider how far the injury is calculated to disable plaintiff from engaging in those industrial pursuits for which she was otherwise qualified, when there is no evidence as to what industrial pursuit plaintiff was capable of engaging in before the injury.

A prayer is erroneous which does not submit questions of fact to the finding of the jury but suggests argumentatively that certain things might have happened.

A medical witness who attended the plaintiff after the infliction of the injury relied on as the cause of action and who stated the result of his first examination, may be asked: "What was your prognosis from that and what did you regard as her condition and her opportunities for recovery?"

In an action based on the negligent operation of an automobile which frightened plaintiff's horses, a witness may be allowed to testify that defendant's automobile made more noise than any he ever heard.

When a defendant's prayers referred to the declaration as stating the plaintiff's cause of action, it is error to grant a prayer of the plaintiff which bases his right to recover upon a ground not set forth in the declaration.

When a prayer correctly states the facts which would entitle plaintiff to recover, but adds a reference to another prayer which incorrectly states such facts, as additional ground of recovery, it should not be granted.

In an action where the plaintiff, a woman, alleged that the horse which she was driving had been frightened and made to run away by defendant's negligent operation of his automobile, a witness cannot be asked whether, from his knowledge of the horse, it was a safe one for a woman to drive. That question called for the opinion of the witness as to a matter of which the jury could judge. The witness may state his knowledge of the horse and its traits and then the jury may determine whether it was safe for the plaintiff to drive.

In such action, evidence is admissible to show that the plaintiff's father had warned her against driving the horse because it was dangerous. Such evidence is relevant upon the question of contributory negligence.

*Decided February 26th, 1908.*

Appeal from the Circuit Court for Dorchester County (LLOYD, J.), where there was a judgment for the plaintiff for $3,000.

*Plaintiff's 6th Prayer.*—If the jury find that the plaintiff was driving her horse on High street in the town of Cambridge, and was using due care and caution, the defendant approached in an automobile from the opposite direction, driving the automobile along or near the middle of the street; and shall further find that the defendant, by the exercise of reasonable care and diligence could have seen that the horse driven by said plaintiff was frightened by the approach of said automobile; and shall further find that notwithstanding the fright of said horse the defendant continued to run his said automobile in or near the middle of said street towards said horse and did not run to the side of the road or slacken his speed, and that said horse became thereby so frenzied with fright that it became wholly unmanageable and ran away and threw the plaintiff out of the carriage to which said horse was being driven, thereby injuring the plaintiff, and shall further believe that the defendant in so operating said automobile, if he so operated it, was an act of negligence on the part of the defendant, then their verdict should be for the plaintiff, unless they shall find the injury complained of resulted from the want of care and prudence in the plaintiff directly contributing to the accident. (*Granted.*)

*Plaintiff's 9th Prayer.*—That in order to defeat a recovery

in this suit, on the ground of contributory negligence upon the part of the plaintiff, the burden of proof is upon the defendant to show that the plaintiff was guilty of negligence, and that such negligence on her part directly contributed to produce such injury. (*Granted.*)

*Defendants' 1st Prayer.*—The jury are instructed that while automobiles are comparatively new in use, and novel in construction, operation and movement, there is nothing new or exceptional in the principles of law that apply to their use upon the public highway; that the owner of an automobile has the same right as the owner of other vehicles to use the highways or streets of a city, and, like them, he must exercise reasonable care and caution for the safety of others. (*Rejected.*)

*Defendant's 2nd Prayer.*—Notwithstanding the jury shall believe from the evidence that the defendant was guilty of negligence (and the burden of proving the same is upon the plaintiff), yet if they shall further believe from the evidence that the plaintiff, Nannie S. Dixon, was also guilty of negligence, and that the accident was directly caused partly by the defendant's negligence and partly by the plaintiff's negligence, then the verdict of the jury must be for the defendant, without regard to whose negligence was the greater. (*Granted.*)

*Defendant's 3rd Prayer.*—That if the jury shall believe from the evidence that the plaintiff, Nannie S. Dixon, while driving in her carriage on the second day of June, 1905, as :estified to in the evidence, knew of the near approach of the automobile of the defendant, or could have known of the same by the exercise of reasonable care; and shall further find that the said Nannie S. Dixon knew that the horse that she was driving was afraid of said automobile; and shall further find that the said Nannie S. Dixon could have, then and there, by the use of ordinary care and prudence, gotten out of the way of danger, then it was the duty of the said Nannie S. Dixon to have gotten out of the way of danger, and that if she was negligent in this respect, and such negligence directly contributed in any degree to cause the accident complained of, that then the said Nannie S. Dixon is not entitled to re-

cover in this case, and their verdict should be for the defendant, William M. Fletcher. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*F. H. Fletcher* (with whom was *P. L. Goldsborough* on the brief), for the appellant.

*John R. Pattison* and *George H. Dawson, Jr.*, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is a suit by the appellee against the appellant to recover damages for injuries sustained by reason of her horse running away and throwing her out of her carriage and damaging the latter, caused by the alleged negligence of the appellant in operating an automobile on the public streets of Cambridge. There are ten counts in the declaration—five of which are for personal injuries alleged to have been sustained by the plaintiff, and the other five for damages to her carriage.

Each count was demurred to and the demurrers overruled, and there was also a motion to strike out each of the first eight counts, which was refused. But as the Court below granted prayers instructing the jury that there was no legally sufficient evidence to entitle the plaintiff to recover on the first, second, fifth, sixth, seventh, eighth, ninth and tenth counts, we do not deem it necessary to pass upon the demurrers, or the motion in reference to them, as it is not perceived how the defendant could have been injured, even if there was error as to any of those rulings. The case having been submitted on the third and fourth counts alone, we will confine ourselves to the consideration of them, and to the rulings on the evidence and prayers complained of by the appellant. As the fourth count is precisely like the third, except the latter complains of the injury to the plaintiff, while the former seeks to recover for damages to the carriage, it will only be necessary to discuss the third.

1. It alleges that the defendant was the owner of an automobile and while it, under his management and control, was being operated and run by him on the streets of Cambridge, the horse of the plaintiff, which was being driven by her on said streets, became frightened and alarmed at and by the said automobile; that such alarm was indicated at the time by the conduct of the horse, and was, or by the exercise of reasonable care and caution might have been, seen and noticed by the defendant; that notwithstanding the fright and alarm so indicated "the defendant negligently and improperly failed to, and did not, go to the side of the road and stop and remain stationary until the horse of the plaintiff had passed to a safe distance, making in the meantime as little noise as possible, in violation of the statutes of the State of Maryland," that in consequence of said negligence and improper conduct of the defendant the horse of the plaintiff, being so driven by her, became further frightened by said automobile and became unmanageable and ran away, without fault or negligence on her part; and she was thrown out of said carriage and severely bruised and otherwise greatly and permanently injured.

It will be observed that this count relies on the alleged violation of the statute for the right to recover, but it will be well to recall some of the well established rights and duties of persons using public highways. One of the primary duties which any one using them owes others is to exercise reasonable care, and to bear in mind that he does not have the exclusive right of user, whether he be a mere pedestrian, or riding or driving a horse, or using some modern vehicle, such as an automobile. As was said by COOLEY, C. J., in *Macomber* v. *Nichols*, 34 Mich. 217, "When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods; and it cannot be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit

of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them." While that rule is applicable to the use of automobiles on public highways, there are other principles which must be borne in mind—that is to say, ordinary care and caution must be used, and "the quantum of care required is to be estimated by the exigencies of the particular situation; that is, by the place, presence or absence of other vehicles and travelers; whether the horse driven is wild or gentle; whether the conveyance and power used are common or new to the road; the known tendency of any feature to frighten animals, etc." *Indiana. Spring Co.* v. *Brown*, 74 N. E. 615; s. c., 1 L. R. A. (N. S.) 238; *Huddy on Automobiles*, 49. Or as was said in *Shinkle* v. *McCullough*, 116 Ky. 960; s. c., 77 S. W. 196, "While automobiles are a lawful means of conveyance, and have equal rights upon the public roads with horses and carriages, their use should be accompanied with that degree of prudence in management, and consideration for the rights of others, which is consistent with their safety." Other cases are to the same effect, but while the well established rule on the subject is that the owner of an automobile has the right to use public highways as stated above, yet inasmuch as such use may be productive of injury to others, unless carefully run and managed, the Legislature has the undoubted right to regulate the speed and provide other reasonable regulations as to its use, the violation of which may subject the owner to damages for injuries thereby received. We will, therefore, next consider the statute laws of this State, applicable to the counts in the declaration which were held to be sufficient by the lower Court.

2. The statute in force at the time of the accident provided that at the indication of a horse becoming alarmed the person in charge of a motor vehicle "shall go *as far as practicable* to the side of the road and remain stationary until the said horse or horses or other animals have passed a safe distance, in the meantime making as little noise as possible *with the steam.*" Sec. 135 of Art. 56 of Code of 1904. This and other sections

on "Motor Vehicles" were amended by the Act of 1906, ch. 449, but as the accident was in June, 1905, we will refer to those found in the Code. The expression "as far as practicable" was ommitted from the third count, and the appellant contends that for that reason it was demurrable; but it alleges that he did not go to the side of the road——that is to say, did not go *at all.* If those words had been omitted from the statute, it would have been a sufficient compliance, if a party had gone *as far as practicable*, for the law does not require impossibilities. If, for example, there was a row of carriages standing on the side of a road and the driver of an automobile went as far to the side as was practicable on account of the carriages, or if the grade of the road was such that he could not go further to the side, it would be an altogether unreasonable construction to place on the statute, to hold that because the law required him to go "to the side of the road" he had not complied with the statute although he had gone as far as practicable. And so with the words "with the steam" which were also omitted from the third and fourth counts. Manifestly those words were not intended to limit the provision to what are ordinarily called steam automobiles. Sec. 140 of Art. 56 shows that such construction was not intended. It said, "Whenever the term 'motor vehicle' is used in this subtitle it shall be construed to include automobiles, locomobiles and all other vehicles propelled otherwise than by muscular power, except the cars of electric and steam railways and other motor vehicles running upon rails or tracks," and sec. 135 spoke of a person in charge of a "motor vehicle," and of horses "alarmed by said motor vehicle." But if this count was conceded to be defective by reason of the omission of the words "with the steam," the overruling of the demurrer was a harmless error, as the Court subsequently instructed the jury that there was no legally sufficient evidence that the automobile was making "any unusual and unnecessary noise." So without discussing other objections urged, we think the demurrer was properly overruled.

3. We will next consider the rulings on the prayers. The

first prayer of the plaintiff, which was granted, is certainly very broad, when it is remembered that the jury was instructed that the plaintiff could not recover on any of the counts in the declaration, except the third and fourth. By it the jury was instructed that their verdict should be for the plaintiff if they found that the plaintiff was injured by being thrown from a carriage to which the horse being driven by her on High street was attached; that the horse "was frightened and caused to run away by the automobile of the defendant while operated by him upon said street, and that said injury might have been avoided by the exercise of ordinary care and prudence on the part of the defendant," unless they found "that the injury complained of resulted from want of such care and prduence on the part of the plaintiff directly contributing to the accident." It is true that that prayer does not refer to the pleadings, but defendant's "D" prayer did specifically refer to the third and fourth counts, some prayers referred to the other counts and defendant's "H" prayer referred to the pleadings generally. In *Balto. Bldg. Asso.* v. *Grant*, 41 Md. 569, it was said, "But the prayer makes no reference to the pleadings, *nor are they referred to in either of the prayers offered by the defendant.* In such case it has been well settled ever since the case of *Leopard* v. *The Canal Co.*, 1 Gill, 222, no question upon the pleadings can arise in the appellate Court." See also *Giles* v. *Fauntleroy*, 13 Md. 136. The Court's attention to each and every count was thus specifically drawn by the prayers of the defcndant, and hence it was not proper to authorize a verdict for the plaintiff which was not based on the grounds relied on in the counts in the *nar.* held to be valid. There is nothing in the first prayer to instruct the jury as to what care was required of the defendant, to entitle the plaintiff to recover. The mere fact that the plantiff's horse was frightened and that the automobile caused it to run away would not have made the defendant liable, and the additional fact the injury might have been avoided by the exercise of ordinary care and prudence on his part could not authorize her to recover on a declaration which relied entirely on the failure to comply with the statute. The

prayer does not base the right of the plaintiff's recovery upon any of the grounds relied on in the *nar*. The jury may have believed that the injury might have been avoided if the defendant had turned down William street, and that the failure to do so showed a want of ordinary care and prudence on his part, or it may have thought he ought to have gotten out of his automobile and have taken hold of the horse, or may have held him responsible for some other reason not relied on in these counts of the *nar*. "It is a principle of universal application in actions at law, that it is not upon the evidence alone, but upon the pleadings, and the evidence applicable to the pleadings, that a plaintiff can recover in any case." *Balto. Elevator Co.* v. *Neal*, 65 Md. 457.

The defendant filed a special exception to this prayer because it assumes negligence on the part of the defendant, and also excepted to it generally. We do not find that it does assume negligence, but for the reasons above stated we think there was error in granting it. The appellee relied on the first prayer in case of *Balto. City Pass. Ry.* v. *McDonnell*, 43 Md. 537, but that was an altogether different case and there was no such objection to that prayer as we have referred to above.

4. We do not see any objection to the plaintiff's second prayer, excepting by reason of the fact that it makes the first a part of it, which we have said was defective. It instructed the jury that if it found the facts therein stated "then there was a want of ordinary care on the part of the defendant, *as mentioned in the plaintiff's first prayer.*" Inasmuch as the first ought to have been rejected the second must fall with it. If the first had confined its reference to the want of ordinary care to what was stated in the second, much of the objection to the first, stated above, might have been removed, but it does not limit it to the facts stated in the second, and the jury may have thought it was at liberty to find that some other fact or facts showed want of ordinary care. The appellant criticised the second prayer on several grounds, but none of them are tenable. He contended there was a conflict between it and the defendant's "B" prayer, but we do not so understand

it. The latter instructed the jury that there was no legally sufficient evidence that the automobile "was making any un- usual and unnecessary noise as it approached and passed the horse and carriage," while the second only referred to what would have been the duty of the appellant, in reference to the noise, if he had gone to the side of the road and then stopped. We are also of the opinion that it was not neces- sary to further qualify that prayer by more specifically sub- mitting to the jury to find whether there was time, after he discovered, or might by the exercise of reasonable diligence on his part have discovered, that the horse was frightened, to go to the side of the street, etc. There was not only ample evidence tending to show that he did have time, but he undertook to prove that he did go to the side of the street so far as to alarm his wife, who was afraid that he would upset the automobile. As it only undertook to tell the jury what would amount to ordinary care, a discussion as to whether the accident was the result of the defendant's failure to comply with the statute is not relevant in the consideration of the second prayer.

5. Although the sixth was intended to submit to the jury a proposition of law that is correct in the main, some verbal changes could be made in it which would relieve it of possible danger of misleading the jury. It says the defendant "did not run to the side of the road." That might be understood as requiring more haste than the circumstances permitted, as the defendant testified that "as soon as he observed Miss Dixon he put his machine down as slow as he could, cut off the power, but let the motor run, and put on the brakes to keep her from running." It would be better to follow the language of the statute, but the possibility of the jury being misled by that and other expressions which the appellant has criticised is so remote that we would not feel justified in re- versing the case for them if there was no other reason for doing so.

6. We see no objection to the ninth prayer and will not discuss the special exceptions taken to it. The tenth was specially excepted to on the ground that it authorized the jury

in estimating the damages to consider how far the injury "is calculated to disable the plaintiff from engaging in those industrial pursuits and employments for which, in the absence of such injury, she would be qualified." As there was no evidence from which the jury could properly determine what "industrial pursuits and employments" she was capable of engaging in before the injury, it would merely lead to speculation and ought not to have been included in the prayer for damages.

7. The defendant's "D" prayer was properly rejected. It asked the Court to instruct the jury that there was no legally sufficient evidence to entitle the plaintiff to recover on the third and fourth counts of the declaration. There was in our opinion sufficient evidence tending to prove that the defendant did not go to the side of the road and remain stationary until the horse of the plaintiff had passed to a safe distance, after the defendant was aware the horse had become alarmed at the automobile, and that that violation of the statute may have caused the injuries complained of. The defendant's "H" and "J" prayers were also properly rejected. They sought to have the case taken from the jury on the ground of contributory negligence of the plaintiff. There was no such act or conduct on her part as would have justified the Court in declaring as a matter of law that she was guilty of contributory negligence, and it was for the jury to determine. The defendant's second and third prayers, which were granted, submitted the question to the jury as favorably as he could ask. The defendant's "I" prayer asked the Court to instruct the jury that there was no legally sufficient evidence of negligence on the part of the defendant. That was properly rejected and what we have said above will relieve us of further discussion of it.

8. The defendant's first prayer stated a principle of law which has been announced by different Courts, namely, "that the owner of an automobile has the same right as the owner of other vehicles to use the highways or streets of a city, and, like them, he must exercise reasonable care and caution for

the safety of others." That language seems to have been taken from the instruction given by the Superior Court of Delaware in *Hannigan* v. *Wright*, 63 At. 234, but it was only a part of the charge, whereby the jury was instructed as to the rights of the parties, in accordance with the practice of that Court, and was not, as here, the mere statement of an abstract proposition of law. It might under the circumstances of this case have misled the jury, for while the owner of an automobile has the right to use the highways as owners of other vehicles have, the statute requires certain things to be done by him in case a horse becomes frightened. He must not only exercise reasonable care and caution for the safety of others, but he must do what the statute requires, when the conditions therein referred to arise. It would, therefore, be a dangerous practice to grant a prayer like this under such circumstances as exist in this case, as the jury might construe it to mean that as he has the right to use the highways for his automobile as the owners of other vehicles have, the owner of an automobile is under no obligation to go to the side of the road and remain stationary until the horse has passed. The other prayers which were granted were sufficient to inform the jury that the defendant did have the right to use the highways for his automobile—thereby giving him the benefit of that law, without the danger of misleading the jury.

9. As the question of speed was taken from the consideration of the jury, it would be useless to discuss the defendant's sixth and seventh prayers. The eighth is so manifestly bad that it ought not to require any extended discussion. It in effect said that even if the plaintiff established by a preponderance of evidence that the defendant after seeing that the horse was frightened, had violated the statute by not going io the side of the road and remaining stationary until the horse had passed, it was not sufficient to render the defendant liable, "for the horse *might have* frightened at the automobile and the said injury and damage caused even if the defendant had guided his automobile, as far as practicable, to the side of the road and stopped his automobile, and waited a sufficient time for

the horse to pass to a safe distance, or the plaintiff *might have* directly contributed to the said injury and damage by her own negligence." Upon what principle a prayer so framed could be granted we confess our inability to understand. The Court left to the jury to find, by the plaintiff's second prayer, whether the accident could have been avoided by the defendant's going to the side of the road, etc., but this prayer does not do that. It presents a very different proposition from that submitted in the defendant's ninth prayer in *Balto. Pas. Ry.* v. *McDonnell, supra,* which instructed the jury that the fact that the car was running at a greater speed than allowed by the ordinance was not sufficient to render the defendant liable, unless they further found that the accident "could not have occurred" if the car had not been going at such speed, and unless they further found there was no contributory negligence. That prayer was granted by the lower Court and was not passed on by this Court, beyond a mere reference to it, in connection with the plaintiff's second prayer. It was going rather far to use the expression "could not have occurred," and this Court in speaking of the violation of the ordinance said "the defendant was certainly guilty of negligence by so running its car, if the jury believed from the evidence that the accident could have been avoided if the car had not been running at greater speed than six miles an hour." But this prayer simply suggests arguments against the plaintiff's theory and does not submit questions of fact to the jury.

10. There are six bills of exception, presenting rulings on the admissibility of evidence. The first was to the overruling of the objection of the defendant to a question asked Dr. H. O. Reik, who saw the plaintiff shortly after the accident. After giving his experience, stating his examination of Miss Dixon, etc., he was asked the question, "What was your prognosis from that, what did you regard her conditition and her opportunities for recovery?" to which he replied, "The prognosis was very grave, as regards life even; also that when patients do recover there is always a strong probability that there will be some defect." That evidence was followed up

by showing that Dr. Reik had examined the plaintiff three or four times, and by calling upon him to give the result of those examinations. We cannot see therefore how the appellant could have been injured by the question and answer, and on the other hand it was evidence which might have been very material to the plaintiff's case. When a competent physician sees a patient shortly after receiving such injuries as the plaintiff sustained, he would almost necessarily reach some conclusion as to the probable results of the accident, which might be very important in a subsequent examination of the patient. He could more readily detect any attempts at feigning by reason of his former investigations and conclusions. As Dr. Reik testified he was compelled to rely to some extent in the subsequent examinations on her answers, and therefore if her condition on those occasions corresponded with his prognosis just after the accident, he could doubtless speak with more certainty about her condition at the time of the trial. The question was properly allowed.

11. As the evidence in reference to noises became immaterial when the court granted the prayers on that subject above referred to, it is not necessary to discuss the second bill of exceptions, although we are of the opinion that there was no error in permitting the witness to testify that the defendant's automobile made more noise than any he had ever heard. The third and fifth exceptions may be considered together. William J. Edger, who had been in the livery business for nine years, had known the horse of the plaintiff four or five years, had an opportunity of observing it and noticed it frequently, was asked by the defendant, "Please state whether or not, in your opinion, that horse was fit for a lady to drive," and William H. Baker, who had been in the livery business for twenty years, knew the horse for four or five years and had charge of it, was asked, "Will you please state whether from your knowledge of this mare, she was safe for a woman to drive?" Both of those questions were objected to and ruled inadmissible by the lower Court. We are of the opinion that there was no error in those rulings.

If we treat those witnesses as experts on the subject of horses, what was said in *Stumore* v. *Shaw*, 68 Md. 19, will apply. JUDGE MILLER, in delivering the opinion in that case, said: "There is a general concurrence of authority and decisions in support of the proposition that expert testimony is not admissible upon a question which the Court or jury can themselves decide *upon the facts;* or stated in other words, if the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence, and the conclusions or inference must be drawn by the jury." As the manifest object of this evidence was to show contributory negligence on the part of the plaintiff, it would probably have resulted in having a large array of witnesses on each side to testify on the question, if such evidence had been allowed—many of whom would be influenced by their own peculiar notions of what a woman is capable of doing. The witnesses, whether experts or not, could give their knowledge of the horse and its traits, but the jury could judge as well as they could whether it was safe for the plaintiff to drive this particular horse, without having the opinion of witnesses on the subject.

12. We think there was error in sustaining the objection to the question in the fourth bill of exceptions. The defendant, proposing to show by a witness that he had heard the father of the plaintiff tell her, prior to the accident, of the dangerous character of the horse and warn her against driving it, asked him this question: "State if while you were at Mr. Hooper's stable and were attending to this horse, you heard Dr. Dixon say to his daughter, Miss Nannie, anything about the horse's traits and character, if so, tell us what he said." The witness had previously testified that he was working at Mr. Hooper's stables at the time of the accident, had known the mare since she was two years old and it was a part of his duty to attend to her. He had also testified that he had always thought she was fractious and never thought she was fit for a woman to drive—that apparently not having been objected to when that witness was examined. The question was relevant as

reflecting upon contributory negligence, and we do not see any objection to its admissibility in the manner proposed.   If the defendant could show what the record states he proposed to show by that witness, it was admissible and the question asked might have elicited such an answer.   The weight of the testimony would have been for the jury, but it should have been admitted for their consideration.

The ruling presented by the sixth exception was correct. There was no evidence that the horse was not properly geared' and it would have been mere speculation on the part of the witness if he had answered it.   For that and other reasons which might be given, the objection was properly sustained.

For errors in granting the plaintiff's first and tenth prayers and in rejecting the testimony mentioned in the fourth bill of exceptions, the judgment will be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs, above and below.*