# THE HAGERSTOWN AND FREDERICK RAILWAY COMPANY, a Corporation,

## *vs.*

# THE STATE OF MARYLAND, for the Use of Olive Cunningham, Widow of Frank N. Cunningham, Deceased, Etc.

*Common carriers: electric cars; duty to passengers; negligence, proof of—; speculation not sufficient. Pleadings and evidence. Judicial knowledge.*

A carrier of passengers is not an insurer of their safety.
p. 323

Such carrier is only bound to employ the utmost care and diligence that human foresight can use.          p. 323

Failure or omission to discharge this duty is an act of negligence, and if injury results therefrom an action by or on behalf of the injured passenger will lie.          p. 323

But in such a case there must be sufficient evidence legally to prove negligence, and to connect it with the injury, before the Court is justified in allowing a case to go to the jury; speculation and conjecture are not sufficient.          p. 323

The defendant has the right to have the jury confined to the issue made by the pleadings.          p. 324

Judges can not denude themselves of the knowledge of the incidents of railway travel which are common to all.          p. 326

A passenger on an electric car who leaves a place of safety and voluntarily assumes a position of risk on the platform can not recover for injuries thence sustained, unless he can show special negligence.          p. 327

*Decided November 15th, 1916.*

Appeal from the Circuit Court for Washington County. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE. THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Frank G. Wagaman* and *Alex. Armstrong, Jr.,* for the appellant.

*Elias B. Hartle* (with whom was *Jos. W. Wolfinger,* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

This suit was brought by the State for the use of the widow and infant children of Frank N. Cunningham to recover damages for his death which it is alleged was caused by the negligence of the appellant, the defendant below. A judgment was recovered against the defendant in the lower Court. The appeal before us was taken by the defendant from that judgment.

The appellant is a corporation and is a common carrier of passengers for hire. It is an electric railway company and operates its cars upon certain streets in the city of Hagerstown, in Washington County, Maryland, and elsewhere in that county. The deceased was a passenger upon one of the defendant's cars on the afternoon of April 11th, 1915, and fell from or was thrown from the car at or near the intersection of Wayside avenue and Potomac street in Hagerstown, and sustained injuries which resulted in his death. There is a curve in the tracks of the defendant company at the place above mentioned, and the deceased was thrown by the sway-

ing motion of the car as it passed around this curve. It is not contended that this curve was improperly constructed, or that there was any defect in it or in the car upon which the deceased was riding.

The declaration contained two counts which alleged the particular negligence of the defendant upon which the action is based. In the first count it is alleged: "that on account of the crowded condition of said car, the seats and aisles thereof being occupied by other passengers previously admitted to said car, the said Frank N. Cunningham was compelled to stand at or near the rear door of the said car, and that one of the side or entrance doors leading to the rear platform of said car was carelessly and negligently left open by the defendant and that the said car being thus crowded and occupied by passengers as aforesaid and the said door being thus carelessly and negligently left open was carried and propelled upon and along the tracks and rails of the defendant to a point at or near the intersection of Wayside avenue with North Potomac street, in the City of Hagerstown aforesaid, with such speed and recklessness that many of said passengers in said car were jolted, thrown about and from their seats and many of those who were compelled to stand thrown down, and the said Frank N. Cunningham by reason of the negligence and carelessness of the defendant in the premises was thrown through the side or entrance door leading to the rear platform of said car, the same being carelessly and negligently left open as aforesaid, and from said car and upon the street with such force and violence whereby the said Frank N. Cunningham received injuries from which he shortly afterwards died." In the second count it is alleged: "That on account of the crowded condition of said car, the seats and aisles thereof being occupied by other passengers previously admitted to said car, the said Frank N. Cunningham was compelled to stand at or near the rear door of the said car, and that one of the side or entrance doors leading to the rear platform of said car was

carelessly and negligently left open by the defendant and
that the said car being thus crowded and occupied by passen-
gers as aforesaid and the door being thus carelessly and negli-
gently left open was carried and propelled upon and along
the tracks and rails of the defendant to a point at or near
the intersection of Wayside avenue with North Potomac
street, in the City of Hagerstown aforesaid, with such speed
and recklessness that many of said passengers in said car
were jolted, thrown about and from their seats and many of
those who were compelled to stand thrown down, and the said
Frank N. Cunningham by reason of the negligence and
carelessness of the defendant in the premises was thrown
through the side or entrance door leading to the rear plat-
form of said car, the same being carelessly and negligently
left open as aforesaid, and from said car and upon the street
with such force and violence whereby the said Frank N.
Cunningham received injuries from which he shortly after-
wards died."

It thus appears by the allegations of the *narr.* that the
right of recovery is based upon the excessive and reckless
speed of the car as it passed over the curve. That this was
the understanding of the plaintiffs' counsel appears by the
twelfth prayer of the defendant, which was conceded and
thus became the law of the case, by which the jury were
instructed that if they found from the evidence that the car
"at the time of the injuries complained of in this case was
being operated at a speed consistent with good safe railroad-
ing, having due regard for the safety of the passengers upon
the rear platform of said car, then the defendant was not
guilty of any negligence in the operation of said car and
their verdict must be for the defendant."

The Record contains six exceptions to rulings on evidence,
and one to the action of the Court on the prayers. By the
defendant's second prayer, submitted at the close of the whole
testimony, the Court was asked to instruct the jury that
under the pleadings in the case there was no legally suffi-

cient evidence to entitle the plaintiff to recover, and that the verdict should be for the defendant. This prayer was refused, but as we are of opinion that it should have been granted, the other questions raised by the exceptions need not be considered in this opinion. Before discussing this prayer it might be said that the deceased was standing upon the rear platform of the car close to the outer edge of the platform and resting against the rear end of the car. The door on that side leading to the street was open. He was smoking a cigar when he got on the car, and evidently occupied that position for his own convenience. Upon the uncontradicted evidence he was not compelled for the reasons stated in the declaration to occupy that position, and there was no necessity for his doing so. Not one of his witnesses testified that there was no room inside the car, and some of them said there was room inside. The evidence of the plaintiff makes it quite clear that Mr. Cunningham could have found a place of safety inside the car. The uncontradicted testimony of the conductor, Omer Steffey, on this point was as follows: "I saw Mr. Cunningham enter the car at the Country Club road. He placed himself right in doorway as you enter the car and made no effort to get into the car. He placed himself right there and right there is where he stood. He was standing there when I collected his fare. I asked him to get inside; I asked him also when he stepped up on the platform of the car to go inside of the car. I told him there was room inside and there was room, too. The last time I was in the car there was not a soul standing in the passenger compartment. The seats were all taken but no one was standing. There were people standing in the smoking and passenger compartments. There was room for more passengers to stand in the smoking compartment and in the baggage compartment. I went through several times. After Mr. Cunningham got on the car I went through the car before we got to the railroad and got off at the railroad. After I got off the car at Fair Ground avenue, I boarded it again

and went through the car and gave the motorman the signal
to go ahead. I asked the people to get off the platform so
that I could get in and give my bell rope, but they did not
go in. I just stepped up on the inside of the car to give my
bell rope when the accident happened, because I had a pas-
senger that wanted to get off at Charles street. When I got
on the car at Fair Ground avenue Mr. Cunningham was
standing right in the doorway. He was not holding to any-
thing, he was just smoking a cigar the last time I noticed
him. He was standing right there with his back against the
door smoking a cigar holding it in his right hand. He had
both hands in front of him. I asked him to go inside, the
last time I asked him to go inside was at East Hagerstown,
I asked him several times up the road further."

The duty which a common carrier owes to its passengers
has been declared in numerous decisions in this Court, and
we need only refer to the case of *The City Passenger Ry.
Co.* v. *Nugent,* 86 Md. 349, wherein it is said: "A carrier
of passengers is not an insurer of their safety. This is the
settled law. Such a carrier is only bound to employ the
utmost care and diligence which human foresight can use.
*Washington Turpk. Co.* v. *Case,* 80 Md. 45; *State, use of
Coughlan* v. *B. & O. R. R. Co.,* 24 Md. 102. This is the
limit and the measure of the duty which he owes to the pas-
senger. His failure or omission to discharge that duty is an
act of negligence and if injury results from that negligence
an action will lie. It is apparent, then, that all actions of
the kind we are now dealing with, to be maintained, must
be founded on negligence of the defendant, both asserted and
proved. If there be no negligence, though there be an in-
jury, no action will lie."

"There must be legally sufficient evidence to prove negli-
gence, and to connect that negligence with the injury, before a
Court is justified in allowing a case to go to the jury. Specu-
lation and conjecture will not do. There are cases where the
proof of the injury, under certain circumstances, raised a pre-

sumption of negligence on the part of the carrier." As said by this Court in *Balto. & Ohio R. R. Co.* v. *State, use of Mahone,* 63 Md. 144, "if one is injured by the breaking down, or upsetting of a vehicle used in transportation, or by the colliding of one train with another, or by the train running off the track from some defect in the road bed, in these and other like cases, the *evidentiary facts* in themselves create a presumption of negligence on the part of the carrier." *Balto. & Yorktown Turnpike Road* v. *Cason,* 72 Md. 377. There is nothing in the allegations or in the proof in this case to bring it within the doctrine of *res ipsa loquitur,* as defined in *Benedict* v. *Potts,* 88 Md. 53, and illustrated in *Mahone's case, supra.*

The effect of the prayer was to confine the plaintiff to proof of the particular negligence asserted in the declaration, and unless legally sufficient evidence of that negligence was offered there could be no recovery. JUDGE BOYD said in *Fletcher* v. *Dixon,* 107 Md. 420: "It is a principle of universal application in actions at law that it is not upon the evidence alone, but upon the pleadings and the evidence applicable to the pleadings that a plaintiff can recover in any case." And applying the same rule in *M. & M. Trans. Co.* v. *Hazelton,* 108 Md. 564, JUDGE BRISCOE said: "The defendant's prayers are based upon the insufficiency of the evidence to prove that the death of Hazelton was occasioned by the negligence as alleged in the pleadings. It is well settled that the defendant has the undoubted right to have the jury confined to the issue made by the pleadings."

We turn now to the consideration of the testimony by which it was sought to prove the alleged negligence of the defendant, viz, the excessive and reckless speed of the car in running around the curve in question. On this subject the plaintiff called eight witnesses, who testified as follows:

1. Calvin S. Shank: "Car started and as it approached Wayside avenue I had no way of telling what speed it was running at. I ride right frequently in an automobile and look at the speedometer; I ride often on a trolley and I know

the car was running at a right fair rate, to my views between fifteen to twenty miles per hour. I had no way to tell that. I had ridden on that car before. I do not base the rate of speed on the way we were shook up, that was prior. I had nothing to tell how fast the car was running."

2. Harry L. Young: "From Fair Ground avenue to the curve at Wayside avenue the car picked up a good rate of speed. It had an ascent there, but maintained a pretty good rate of speed until he hit that curve, going between twelve to fifteen miles per hour. I did not observe especially the speed for I was talking, but I noticed it was lively. I have often ridden on a motorcycle and automobile and I noticed it was going fast, the car did not slow down any at the curve."

3. Joseph R. Minnick: "I did not observe the speed of the car it was running at, I have no way of telling the speed. It was running at a good rate of speed, but I do not know how fast. I had said it was going faster than usual."

4. Lehman Sneckenberger: "As the car reached Wayside avenue I said it was running from twelve to fifteen miles per hour, but I do not have any idea, I was just guessing. I have ridden in an automobile and looked at the speedometer. I can judge speed, but I did not pay any attention at the time. If I had noticed how fast the car was going I might have judged then."

5. Chloral Smith: "The rate of speed as near as I can judge was about fifteen miles per hour."

6. Charles E. Petre: "At the time of the accident I would think the car was running from fifteen to twenty miles per hour."

7. Carl Gordon: "At the time he (Mr. Cunningham) fell the car was going pretty fast; I could not say exactly how fast it was going, but it was going pretty lively."

8. Henry Potter: "I have no way of reckoning the speed, but thought it was going faster than usual."

It is apparent that this testimony as to the speed of the car is more or less conjectural and speculative. None of the witnesses venture to say that the speed was excessive or dangerous, or that the car was running in a reckless manner. But if it be conceded that the car was running at the rate of fifteen or twenty miles per hour—that being the greatest estimate of speed given by any of the witnesses—there was no evidence on the part of the plaintiff that that was an improper or excessive speed to be maintained in running over this curve. Three witnesses, all experienced in street railway operation, and two of whom were familiar with the curve in question and with the cars of the defendant, testified that a speed of fifteen to twenty miles over that curve would be consistent with safe railroad operation and would not be excessive speed. This evidence was not contradicted.

There were a number of passengers on the rear platform as the car rounded the curve and there was of course a swaying or lateral movement of the car. This movement is described by some of the witnesses as "a jar," "a jolt," "a rather severe jolt," "a swinging jolt," etc., and it was with difficulty that some of the persons on the platform were prevented from falling. But it can not be logically or legally inferred from these facts, considered in connection with the other facts in evidence, that the car was running at an excessive or reckless speed. It was said in *Cason's case, supra,* that: "Judges can not denude themselves of the knowledge of the incidents of railway travelling, which is common to us all," and in the case of *Charles* v. *United Rys. Co.,* 101 Md. 183, JUDGE SCHMUCKER said: "It is a matter of common knowledge of which courts will take cognizance that street cars do not run with entire smoothness, but are subject to occasional jars and undulations as they enter or leave switches or cross intersecting tracks or encounter obstacles or slight inequalities in the track."

After the most careful consideration of all the testimony offered in support of the plaintiff's case in connection with

the uncontradicted evidence appearing in the record, we are compelled to hold there was no breach of duty on the part of the defendant to the deceased shown in the case, and that the second prayer of the defendant should have been granted. It may be said in closing that Mr. Cunningham had voluntarily taken the position we have referred to on the platform. He was urged by the conductor to go inside the car where there was room, and where he would have been safe. He declined to go. He had been holding with one hand to a support from which it is reasonably certain he had released his hold, and as the car was rounding the curve he fell or was thrown by its swaying motion, and while it is not necessary in the view we have taken of the case to characterize his conduct, it is difficult to escape the conviction that he voluntarily took upon himself the special risk of his position.

For error committed by the Court in refusing the defendant's second prayer, the judgment must be reversed, and as there can be no recovery in the case a new trial will not be awarded.

*Judgment reversed, without awarding a new trial, with costs to the appellant.*