## HOLLAND FURNACE COMPANY *v.* ARTHUR G. ROLLMAN ET AL.

[No. 28, April Term, 1941.]

*Decided June 10th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*J. Dudley Diggs,* with whom were *William D. Macmillan, Lansdale G. Sasser,* and *Semmes, Bowen & Semmes,* on the brief, for the appellant.

*Charles C. Marbury,* with whom were *M. Hampton Magruder* and *Wilmer D. Pyles,* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

The plaintiffs, for themselves and to the use of their insurer, the New York Underwriters Insurance Company, recovered a judgment against the defendant, for damage by fire to the house and furniture of Arthur G. Rollman and Jane F. Rollman, his wife, for the alleged negligent installation of a hot air furnace in the home of the Rollmans, from which the defendant appeals.

The plaintiffs, Arthur G. Rollman and Jane F. Rollman, were the owners of, and occupied, a 3-room house at Lanham in Prince George's County, which they had moved to the front of the lot, to which they were building a two-story addition, and basement. During construction of the addition they continued to live in the old part of the house. On July 30th, 1938, the defendant, in writing, agreed to install a hot air furnace in the house with necessary connections to heat five rooms on the first floor, with "one stack to the second floor," for which the Rollmans agreed to pay $342, on account of which $50 was paid in cash, but did not stipulate when the balance was to be paid. The defendant installed the furnace and put in two ducts or pipes from the furnace to registers in two of the first floor rooms, connections with the other rooms to await the completion of the improvements to the house. On December 20th, 1938, after the furnace was installed, and the two connections made, Ernest G. Zion, the defendant's superintendent of installation, built a fire in the furnace, and instructed Mrs. Rollman how to operate it. On December 22nd, 1938, two days later, the house caught afire and with its contents was completely destroyed. The insurer, the New York Underwriters Insurance Company, paid the loss, amounting to $4,138.07, whereupon suit was brought by the insured for its use, against the defendant, charging that the fire loss had occurred because of the careless and negligent installation of the heating plant.

The only exception in the record is to the granting of the plaintiff's 2nd and 3rd prayers, and the refusal of the defendant's A1, B1, C1, D1, 2nd and 3rd prayers. The only prayers argued on the defendant's brief and in the argument were the defendant's A1, B1, C1 and 2nd prayers.

The defendant's A1 is the usual demurrer prayer, and we must, therefore, decide whether there is legally sufficient evidence to submit the case to the jury.

There is no doubt that there was a fire, but whether there was any sufficient evidence that the carelessness

and negligence of the defendant in installing the heating plant caused the fire requires a review of the evidence. Mrs. Rollman was at home at the time; she caught a cold the day before, December 21st, and was in bed most of the time until about 3 o'clock in the afternoon of the 22nd; about 4 o'clock, she was in the living room and she got so hot she felt like she was going to suffocate, "got a whiff of rosin, looked in the bedroom, the whole wall was on fire * * * around the register," she then ran next door for her sister-in-law.

John T. Campbell, who lives in the neighborhood, was going by the Rollman house about 4:15—4:30 P. M., and saw smoke coming from the rear of the house, stopped his car, went to the back of the house, looked in the cellar and saw flames in there, broke open the cellar door, got a bucket and carried water from a nearby well, but it was ineffective, he was too late. He said, "The first place I saw was up around up over this pipe that is coming into the furnace. The pipes were bare; I noticed that in particular; and the pipes were—well the ceiling was low; it seemed like there was not much space—there was some space but not much—between the pipes and the ceiling going back under the house; * * * the pipe was bare, it did not have anything on it, * * * not any insulation on those pipes. I am well familiar with that because I practically do some of that work myself. * * * There was some asbestos in the cellar on the floor, though, * * * it did not look to me like there was much space between those pipes and the floor joist."

Harry Wolf, a school-bus driver, stopped to let out some children when he saw smoke coming from the basement of the Rollman house. He got into the cellar and threw one bucket of water on the flames but saw there was no use in trying to put it out. "The flames were all in the ceiling, over the heater, over the top of the heater, and around those pipes that led from the heater. * * * Where they went in through the floor. * * * I particularly noticed over the heater, that there was no insulation at all over the top of the heater. * * * I could not swear to

the ducts or pipes, but I really noticed over the top of the heater, because I had some work done on mine, which was hot—." With this evidence the plaintiff concluded, and as there was nothing in the defendant's evidence which adds much, if anything, about the fire and its cause, we have all the evidence applicable to the defendant's A1 prayer.

There is evidence here, in fact it is undeniable, that the fire in the furnace set the house afire. Nobody saw the house ignite, but it seems to us that there is enough for a jury to say whether the installation of that furnace was defectively or improperly done. One witness, Campbell, noticed that the pipes were bare, one Wolf, that there was no insulation over the furnace, and both had some knowledge of its use in such cases. Mrs. Rollman first saw the fire around the register in the bedroom. The fire had been started by Zion, and kept going for two more days by the Rollmans, and there is no evidence that either of them in firing the furnace did anything out of the ordinary, from which any negligent act might be inferred.

The case of *Baltimore American Underwriters v. Beckley,* 173 Md. 202, 195 A. 550, 551, and the law there laid down, it seems to us applies here. John D. Beckley was a sub-contractor engaged to remove the stain and varnish from paneling in the living room of a house in Baltimore County, and to restain the surface. The removal of stain and varnish involved the application of an inflammable paste, and the use of putty knives for scraping, and the wood afterwards rubbed with steel wool and alcohol. The metal plate over an electric light switch had been removed. After working two and a half days, two employees of Beckley suddenly found themselves in the midst of a fire by which they were "slightly burned and very scared." Neither of them could say whether the ignition was from friction, electric spark or too little ventilation. And in that case, quoting from *Singer Transfer Co. v. Buck Glass Co.,* 169 Md. 358, 362, 181 A. 672, it was said: "Where damage to property is caused by

the operation of some instrumentality within the exclusive control of the defendant under circumstances which justify the inference that it would not have occured had the defendant exercised ordinary care, negligence may be presumed as a rational inference from those facts." See, also, the cases cited in support of the text. Applying these cases to the instant case, we are of the opinion that the defendant's A1 prayer, should have been, as it was, refused.

The defendant's B1 prayer, a variance prayer, was for a directed verdict.

It is not contended by the plaintiffs that their evidence is not restricted to their bill of particulars. *Roth v. Baltimore Trust Co.*, 161 Md. 340, 347, 158 A. 32; *Hagerstown & Frederick Ry. Co. v. State use of Cunningham*, 129 Md. 318, 99 A. 376. There was no exception to the bill of particulars (*Gaver v. Frederick County*, 175 Md. 639, 3 A. 2nd. 463) so that the question for decision on this prayer is one of fact. The bill of particulars says the act of negligence was in "failing to insulate with asbestos or other insulation the hot air ducts which were placed directly against the wooden timbers and ignited through said ducts, and also connecting only two ducts to the heating plant through which all of the heat was concentrated when the plant was in operation: * * * although five ducts were installed for heating the whole house."

The defendant contends that the variance is fatal to the plaintiffs because there was no evidence that the pipes or ducts were "directly against the wooden timbers," but there was affirmative evidence that there was some space between the pipes and the ceiling joists. This criticism of the evidence by the defendant has little, if any, merit in view of the fact that Mrs. Rollman saw the flames coming out of the bedroom register, Campbell saw the joists in the first floor (cellar ceiling) ablaze along the pipes, Wolf saw the flames over the furnace and around the pipes "Where they went in through the floor." There certainly was evidence of contact where the pipes passed

through the floor to carry hot air to the register. There is evidence that the pipes were in such proximity to the first floor and joists that they set the house afire. There is evidence that there was a roll of asbestos in the cellar, intended to cover the pipes, to serve the double purpose of protecting the house, and to conserve the heat for discharge into the rooms above. Campbell and Wolf both testified to the use of asbestos. Zion said "It is to insulate the heat in the pipe, or retain the heat in the pipe. * * * It is used on the conducting pipes from the furnace to the outlets in the room. That is the company's policy. Sometimes a customer wants the whole furnace wrapped. Our company does not want it, but if the customer wants it we give it to him." The aforegoing evidence in our opinion is in substantial agreement with the bill of particulars, and the ruling on the B1 prayer was proper.

There was a provision in the contract that, "Heating plants used in unfinished buildings and those used before the installation is completed are used at Buyer's risk," and the defendant's C1 prayer asks a directed verdict on the ground that the undisputed evidence is that the heating plant "was being used before the installation had been completed," and was, therefore, at the "buyer's risk." The defendant's 2nd prayer submitted the same proposition for a finding by the jury. The granting of either prayer would have resulted in a mandatory verdict for the defendant for the installation contracted for had not been completed—it contemplated the connection, eventually, of six connections of rooms, with the furnace, when only two had been made, and to all appearances they were completed. The defect in both prayers is that they omitted and ignored evidence on the part of the plaintiffs that they had not requested that the furnace be fired, and that the conduct of the defendant's superintendent in building a fire after two connections had been made and the instructions to Mrs. Rollman how to regulate it might amount to a waiver of the quoted provision of the contract. When Zion fired the furnace with two connections made to rooms in the original house which

the plaintiffs had not vacated; but in which they continued to reside while the improvements were going on, and the advice or instructions he gave Mr. Rollman as to its operation were facts from which a jury might decide that the provision of the contract quoted in the defendant's C1 and 2nd prayer was waived, there being evidence from which the jury might find that Zion was the agent of the defendant acting within the scope of his authority; he made the sale, supervised the installation and test of the furnace. Agency is generally a question of fact for a jury. *Jones v. Sherwood Distilling Co.*, 150 Md. 24; *Stabler v. Tankersly*, 146 Md. 454; *Consolidated Ry. Co. v. Pierce*, 89 Md. 405. There was, therefore, no error in the refusal of the C1 and 2nd prayers.

It follows that the judgment appealed from should be affirmed.

*Judgment affirmed, with costs.*