THE UNITED RAILWAYS AND ELECTRIC CO. *vs.* STATE OF MARYLAND USE OF EMMA P. DEANE ET AL.

*Liability of Carrier for Assault Committed by Disorderly Passenger— Sufficient Evidence of Carrier's Negligence—Instructions to the Jury.*

When the servants of a carrier know or have the means of knowing that a disorderly passenger is likely to commit an assault, it is their duty to control or eject him, when they have the means of doing so, and the neglect of this duty, resulting in injury to another passenger, constitutes actionable negligence.

A drunken and disorderly man was a passenger on defendant's street railway car, and assaulted a passenger on the rear platform.  He was put off by the conductor and motorman, but was allowed to get on again as the car started, and no attempt was again made to eject him, notwithstanding his continuous violent and disorderly conduct.  Shortly afterwards, and without any provocation, this man struck another passenger in the eye causing the rupture of a cerebral blood vessel, and thereby producing paralysis and death.  In an action by the widow and children of the deceased to recover damages, *held,* that the evi-

dence of defendant's negligence was sufficient to take the case to the jury, because the defendant's servants knew that this turbulent and drunken man was likely to injure some of their passengers and they failed to remove him, their ability to keep him off being shown by their having once put him off.

In the above case, the defendant asked for an instruction that the plaintiffs were not entitled to recover unless the jury found that after the drunken man re-boarded the car and took a seat near the deceased, the defendant's servants knew or should have known of the danger to the deceased and by the exercise of proper care and the agencies at its disposal could have prevented the blow. *Held*, that this instruction was properly refused, *first*, because it ignored what had happened before the disorderly man returned to the car, although that threw light upon what was likely to happen and did happen after his entrance ; *second*, because it limited the consideration of the jury to the danger to the deceased, though the defendant's liability depended upon the circumstance that any passenger and not merely that particular individual was in peril.

Appeal from the Superior Court of Baltimore City (Dob-ler, J.) The jury returned a verdict for the plaintiffs for $4,500.

*Plaintiff's Prayer.*—If the jury shall find from the evidence that the deceased, Frank H. Deane, on the 17th day of September, 1899, was a passenger on one of the cars of the defendant company, having got on the car at or near the corner of Charles and Henrietta streets, and that a man named Geisenkotter boarded the said car at or near the corner of Charles and Cross streets, and that while on said car behaved in such disorderly and turbulent manner that the conductor in charge of said car, in the performance of his duty, ejected the said Geisenkotter from the said car, and that after being so ejected, he jumped on again without the consent of the conductor, who, however, permitted him to remain thereon, and that said Frank H. Deane was assulted and struck by said Geisenkotter without provocation from said Deane, and was taken from the car in an unconscious condition caused by the violence so inflicted upon him by said Geisenkotter, and if the jury shall further find that by the exercise of reasonable care and vigilance and by the use of reasonable force the conductor and motorman could have protected the said Deane from the violence of said Geisenkotter, or could have kept said Geisenkotter

from remaining on said car after knowledge that he had wrongfully re-entered thereon, but failed to do so, and that said Deane shortly afterwards died and that his death was due to the shock of the assault and attack upon him by said Geisenkotter, then their verdict should be for the plaintiff, for such sum as will compensate the equitable plaintiff, Emma P. Deane, widow of said Frank H. Deane, and the equitable plaintiffs, John E. Deane and Annie E. Deane, infant children of said Frank H. Deane, for the pecuniary loss sustained by them by his death. (*Granted.*)

*Defendant's 1st Prayer.*—The jury is instructed that there is no legally sufficient evidence in the case to entitle the plaintiff to recover and the verdict must be for the defendant. (*Rejected.*)

*Defendant's 2nd Prayer.*—That it does not follow and cannot be presumed that because the man Geisenkotter was drunk and offensive to others, as well by his demeanor as in his appearance, that he was a dangerous man and that his presence on said car imperilled the safety of passengers, and that because of his drunkenness he might violently assault or injure other passengers without provocation. *Putnam* v. *Broadway Ry. Co.,* 55 N. Y. 108, 40 L. R. A. 136. (*Granted.*)

*Defendant's 3rd Prayer.*—That there is no evidence in this case to show that the defendant through its servants or agents, in charge of said car, could have prevented the injury complained of, after it became aware, or by the exercise of proper care, could have become aware, of the danger of the deceased and the other passengers on said car. (*Rejected.*)

*Defendant's 4th Prayer.*—That the plaintiff is not entitled to recover in this case if the jury find from the evidence that the death of the plaintiff resulted from the altercation between the deceased and the man Geisenkotter, a fellow-passenger on said car, unless the jury further find that the defendant, its servants or agents, knew or ought to have known that danger existed or was reasonably to be apprehended, and they could, by the use of proper care and the agencies at their disposal, have prevented the mischief. *Connell* v. *C. & O. R. R.,* 93 Va. 44. (*Granted.*)

*Defendant's 5th Prayer.*—That there can be no recovery in this case unless the jury find from the evidence that the plaintiff affirmatively shown by a fair preponderance of testimony that the death of the deceased was caused by the negligence of the defendant, its servants or agents, and the jury are instructed in determining whether or not the defendant, its servants or agents, were guilty of negligence, that the law makes no unreasonable demands and it will not consider the defendants, its servants or agents, guilty of culpable negligence for failing to take precautions which in the opinion of the jury, no other man of ordinary prudence would have taken under the circumstances of the case. (*Granted.*)

*Defendant's 6th Prayer.*—That if the jury believe from the evidence in the case that the defendant, its servants and agents, in charge of said car, made a reasonable effort to protect the passengers on said car, from assault and injury from a fellow-passenger, after they knew or should have known such danger existed, but failed to prevent or remove said danger, with the means at their disposal, their verdict must be for the defendant ; unless the jury further find the defendant's agents and servants in charge of said car, failed to act as the jury believe prudent and cautious men should have acted under the circumstances of the case. (*Granted.*)

*Defendant's 7th Prayer.*—That the defendant as a common carrier of passengers for hire, is not an insurer of the absolute safety of its passengers, but it is bound to use reasonable care according to the nature of its contract, and is only liable to its passengers for torts or injuries inflicted by fellow-passengers when it could have prevented the injury with the force at its command, but neglected to do so. *B. & O. R. R.* v. *Barger*, 80 Md. 31. (*Granted.*)

*Defendant's 8th Prayer.*—That if the jury find from the evidence in this case the man, Geisenkotter was removed from the car on account of his disorderly and objectionable manner by the defendant its servants and agents in charge of said car, but again boarded said car, after it was started and while in motion, and took a seat beside or near the deceased, and

then became involved in an altercation with the deceased, which resulted in the deceased being struck by the man Geisenkotter, and that said blow and the injury inflicted thereby directly contributed to the deceased's death, the plaintiff is not entitled to recover unless the jury further find that after the man Geisenkotter reboarded the car and took a seat beside or near the deceased, the defendant through its servants and agents knew or should have known of the deceased's danger, and by the exercise of proper care, and the agencies at its disposal could have prevented the blow. (*Rejected.*)

*Defendant's 9th Prayer.*—Unless the jury find from the evidence that the defendants, its servants or agents in charge of said car, knew, or by the exercise of proper care, could have known that there was imminent danger to the deceased, and his fellow-passengers on said car, and the jury must further find that the defendant, its servants or agents, knew of, or had the opportunity to acquire the knowledge of said danger sufficiently long in advance of its infliction to have prevented it with the force at its command, the plaintiff is not entitled to recover. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PEARCE, SCHMUCKER, and JONES, JJ.

*Fielder C. Slingluff* and *T. Rowland Slingluff* (with whom was *Geo. Dobbin Penniman* on the brief), for the appellant.

*John Prentiss Poe* and *Daniel B. Chambers* (with whom was *John R. M. Staum* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought in the name of the State of Maryland to the use of the widow and children of Frank H. Deane against the United Railways and Electric Company of Baltimore, to recover damages for the injury caused to the equitable plaintiffs by the death of Mr. Deane. His death is alleged to have been the result of the defendant's negligence, and the negligence charged consisted in the failure of the

company's servants to protect the deceased whilst he was a passenger on one of its cars from the deadly assault made upon him by a fellow-passenger. The main question in the case is whether there was sufficient evidence of negligence to justify the trial Court in allowing the case to go to the jury. At the close of the evidence adduced in behalf of the plaintiff, the defendant requested the Court to withdraw the case from the consideration of the jury. That request was refused and the defendant reserved an exception. The defendant then offered evidence on its part and when all the evidence on both sides was in, it renewed the request previously refused and presented several other prayers for instructions to the jury. The request to withdraw the case from the jury was again refused, though the Court granted several other prayers submitted by the defendant. The refusal to grant the *first*, *third* and *tenth* prayers, which asked to have the case taken from the jury, the refusal to grant the defendant's *eighth* prayer and the granting of the plaintiff's *first* prayer constitute the rulings assigned as error in the second exception. No point has been made upon the plaintiff's prayer and we need not allude to it further than to say that it fairly submitted the law of the case to the jury. The *first* exception is out of the case, because the presentation of evidence by the defendant after the Court had declined to take the case from the jury on the evidence of the plaintiff, was a waiver of that exception. That proposition has been so recently decided in *Barabasz* v. *Kabat*, 91 Md. 53, that we shall not pause to discuss it. We, therefore, come to inquire as to the legal sufficiency of the evidence to support the averments of the declaration.

It may not be amiss, at this point, to state briefly the legal principles applicable to such a case as this, though they were considered and announced not long ago in *Tall* v. *Steam Packet Co.*, 90 Md. 248. "A carrier is not an insurer of the absolute safety of his passengers; yet he is bound to use reasonable care according to the nature of his contract; and as his employment involves the safety of the lives and limbs

of his passengers, the law requires the highest degree of care which is consistent with the nature of his undertaking. *B. & O. R. R. Co.* v. *State, use of Hauer,* 60 Md. 449. This, though the measure of the carrier's duty as between him and his passenger in respect to acts or omissions of the carrier and his servants towards the passenger, is not the standard by which his liability to the passenger is to be guaged or determined when intervening acts of fellow-passengers or strangers directly cause the injury sustained whilst the relation of passenger and carrier is subsisting. Such an injury, due in no way to defects in the means of transportation or to the method of transporting, or to an actual trespass by an employee whilst the relation of passenger continues and involving, therefore, no issues of negligence concerning the duty to provide safe appliances and competent and careful servants to operate them, but arising wholly from the independent misconduct of a third party, furnishes a ground of action against the carrier only when the carrier or his servants *could* have prevented the injury but failed to interfere to avert it. The duty of the carrier in such instances is, consequently, relative and contingent, not absolute and unconditional.   *   *   *   *   *   *
The negligence for which, in such cases, the carrier is responsible is not the tort of the fellow-passenger or the stranger, but it is the negligent omission of the carrier's servants to prevent that tort from being committed. The failure or omission to prevent the commission of the tort, to be a negligent failure or omission, must be a failure or an omission to do something which could have been done by the servant; and, therefore, there is involved the essential ingredient that the servant had knowledge, or with proper care could have had knowledge, that the tort was imminent, and that he had that knowledge, or had the opportunity to acquire it sufficiently long in advance of its infliction to have prevented it with the force at his command." It is not because a *particular* passenger is known by the carrier's servants to be in peril of injury at the hands of a fellow-passenger or stranger that a failure to use the means at command to protect him will be actionable negligence; but it is because

there is a known or discoverable danger that an injury may be done to *some* passenger, and because no effort is made to avert that injury from *all* the passengers, that the carrier is liable if an injury is inflicted on one of the passengers when it could have been prevented. It is just as incumbent on the carrier to protect *all* his passengers from assault by a fellow-passenger when his servants have knowledge or the means of knowing that an assault on some one is imminent and when they have time and means to avert it; as it is to protect *all* his passengers from injuries likely to result from defective means or methods of transportation. Consequently it will not do to say, after an assault has been made, that the servants of the carrier did not know or could not have foreseen that the particular individual who was assaulted, would be injured by an assault, if they were apprised, or with proper care, could have known, of circumstances which indicated that *some* one would be injured unless the disorderly passenger or stranger were ejected or controlled.

Turning to the facts, the usual conflict between the witnesses for the plaintiff and defendant encountered in personal injury cases is found in the record; though there are some circumstances about which there is no controversy. It is quite a familiar doctrine that in dealing with a request to withdraw a case from the consideration of a jury the Court has nothing to do with the weight of the evidence, but is confined strictly to determining whether there is *any* evidence legally sufficient to sustain or justify a recovery. The truth of the evidence adduced on behalf of the plaintiff no matter how flatly contradicted, must, therefore, be conceded, except in very rare instances where it is physically impossible that it could be true. Upon the hypothesis that it is true the sole inquiry is, will it warrant a jury in finding a verdict for the plaintiff? If it will, then the case must go to the jury. If it will not then the jury should not be permitted to deal with it at all.

Now, it is not disputed that on Sunday afternoon, September the seventeenth, eighteen hundred and ninety-nine the deceased got on a car of the defendant railway company on

South Charles street, going north; that at the corner of Charles and Cross streets a man named Geisenkotter boarded the same car; that Geisenkotter was very drunk, boisterous and disorderly; that he assaulted a passenger on the rear platform, and acted like a maniac. Either because of the assault which he made on the passenger upon the rear platform, or because of his violent and threatening conduct he was ejected from the car at the corner of Charles and Barre streets by the conductor and motorman. It is practically conceded that he was not a fit person to be upon the car which was quite crowded with passengers, and, therefore, that he was properly put off. But when the car started he again got on and though the conductor saw him get on and the motorman saw him after he was on, they did not at once make an effort to remove him. Though the car stopped at Charles and Conway streets, one square north of where Geisenkotter had re-entered the car after having been ejected, no attempt was made to remove him notwithstanding his continuous disorderly conduct. The next street north of Conway is Camden. The car stopped there but still no effort was made to put Geisenkotter off. From this point there is a divergence in the evidence. According to the testimony of the plaintiff's witnesses whilst the car was proceeding from Camden street towards Pratt street, Geisenkotter, without the slightest provocation assaulted Mr. Deane, striking him a vicious blow in the eye, which caused the rupture of a cerebral blood vessel and thereby produced paralysis and ultimately death. On the part of the defendant it was shown that an effort was made to eject Geisenkotter at Pratt street; that at each intersecting street search was made for a police officer, but none was found, and that after the car passed Baltimore street and before it reached Fayette street the fatal blow was struck. The company insists that it was not derelict in its duty to the passenger because its agents did not know and had no reason to apprehend that Deane was in imminent danger of injury at the hands of his drunken and disorderly fellow-passenger; and the question was asked during the argument, what did the employees fail

to do that they ought to have done and which if they had done would have prevented the injury ?

It may be true that there was no reason to suppose that Mr. Deane rather than any other passenger was in imminent peril. But that is not material. As already observed, it is not the peril which a particular individual is in that is to be considered in a case of this kind. If there is danger of *any one* being injured and the employes fail to remove, subdue or overpower the turbulent individual after knowing that there is danger or after they ought to have known that there was danger if they had exercised proper care ; that failure is negligence for the consequences of which the company is answerable. So the case comes down to the inquiry, was there evidence tending to show that the employees of the defendant failed to do what they ought to have done under the circumstances ?

There ought to be no difficulty in answering this question. If Geisenkotter, who had assaulted another passenger before he was ejected from the car, and who was drunk, disorderly and turbulent was properly put off the car because his presnce was a menace to other passengers, then it was the plain duty of the employees who put him off, to have kept him off. They demonstrated their ability to *keep* him off by having *put* him off. If he had been *kept* off after having been put off he could not have assaulted Deane. Whilst his assault on the other passenger did not necessarily indicate that he would subsequently strike Mr. Deane, it did show that he was in a condition which rendered it very probable and likely that he would attack some one else, and this was known to the employees sufficiently long before the assault was made on Mr. Deane to enable the conductor not only to put Geisenkotter off, but to have kept him off the car. It cannot be doubted that if there was sufficient reason for putting Geisenkotter off the car so that injury to other passengers might be avoided, there was equally sufficient reason for keeping him off; and the failure to do this when there was power to do it was an act of negligence which caused the injury to and the

death of Mr. Deane.    If, on the other hand, every effort was made by the employees to avert the injury, but was made without success, then the company would not be liable.    This was plainly said to the jury, and it was a question of fact which was properly left to them.

The *eighth* prayer was rightly rejected.    It sought to exculpate the defendant unless the jury should find that *after* ·Geisenkotter re-entered the car the defendant's servants knew or should have known of the danger to the *deceased.* This prayer was faulty for two reasons.    First, it eliminated all the facts that had preceded Geisenkotter's expulsion from the car and narrowed the investigation to the occurrences which took place *after* he had returned though the things which transpired *before* he was put off explained and threw light on what happened *after* his re-entrance.    Secondly, it undertook to confine the jury to a consideration of the danger to *Deane* though the company's liability depended, not on that fact, but upon the circumstance that *any* one was in peril.

· Upon the whole record we think there was sufficient evidence to go to the jury on the question of negligence and it was their exclusive province to weigh its value and probative force.    They evidently believed the version of the unfortunate affair which was narrated by the witnesses for the plaintiff, for they returned a verdict against the defendant, and it is not for us to say that they were mistaken in doing what they did.    As no error was committed by the trial Court, the judgment will be affirmed with costs.

> *Judgment affirmed with costs above and below.*

(Decided June 13th, 1901.)