# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* JAMES RUDY.

*Common carriers: injury to passengers by act of third parties; liability; negligence. Declarations: sufficiency; essential facts. Evidence: other similar occurrences. Jury: powers of—.*

Although a particular fact may be the gist of a party's case and its statement indispensable, yet, in alleging the fact it is not necessary to state such circumstances as merely tend to prove its truth. The dry allegation of the fact without detailing a variety of circumstances which constitute the evidence of it, is sufficient.      p. 54

As between passengers and a common carrier, the independent misconduct of a third party forms a ground of action against the carrier only when the carrier, or its servants, could have prevented the injury, but failed to interfere.    p. 57

The negligence for which the carrier is responsible in such cases, is not the tort of the third party, but is the negligent omission of the carrier's servants to prevent the tort.      p. 57

A declaration which alleges that acts of disorder upon a railway coach, which finally resulted in the injury of the plain-

tiff, were indulged in for a long time prior to the injury complained of, and could have been prevented (by the defendant company) by the use of due care in providing proper and sufficient protection for the passengers on the train, is not demurrable. pp. 56,57

A carrier is not an insurer of the absolute safety of its passengers. p. 65

In an action by a passenger against a railway company for injuries received from a bottle thrown by a fellow passenger, who with others had for a long time been drinking and behaving in a disorderly manner, evidence that the same passengers had been behaving in a similar manner on an earlier train that day is admissible. pp. 58-59

Drunken men should not be permitted on cars, or should be so guarded or separated from orderly passengers as to prevent injury from them. p. 66

To make a common carrier liable in damages for injuries received by a passenger through the tort of a fellow passenger it is necessary that its servants should have known or with proper care could have known that the tort was imminent long enough in advance of its commission for them to have prevented it. p. 65

In such a case a prayer that limits the jury to the consideration of the particular act that resulted in the injury of the plaintiff is erroneous. p. 65

A question to a witness which only elicits his opinion as to the legal obligation resting upon the defendant may be properly objected to. p. 58

In general, the opinion of a witness upon a matter of law is not admissible. p. 58

Questions of conflicting evidence are for the jury. p. 64

*Decided March 27th, 1912.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.). The facts are stated in the opinion of the Court.

The following are the prayers of the plaintiff and of the defendant and the action of the Court upon each:

*Plaintiff's 1st Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury, that, if they shall find from the evidence that on the 11th day of June, 1911, the plaintiff was a passenger on the defendant's railway round-trip excursion train from Romney, West Virginia, to Washington, D. C., and return, and that on said train while running from Romney to Washington and also when returnng from Washington for a period of from thirty to forty-five minutes just after leaving Washington persons had congregated and were engaged in drinking beer and were acting in a disorderly manner and throwing empty beer bottles from the train, and that the defendant's agents and servants in charge of said train knew, or, by the exercise of ordinary care, should have known, of the said disturbances and of the throwing of said bottles, and that the said train, returning left Washington about seven o'clock on the evening of the said eleventh day of June, and that from the time that said train left Washington and for a period of from thirty to forty-five minutes thereafter, several of the same persons who had engaged in said acts of disorder on the downward trip, if the jury find such acts, in the car in which the plaintiff was seated were drinking, carousing and acting in a disorderly manner to the disturbance of the passengers on said car, and at frequent intervals were throwing empty beer bottles from said car toward the eastbound track of the defendant's railway, and shall further find that the agents and servants in charge of the said defendant's train knew that trains were passing or likely to pass on said eastbound track, and shall further find that the throwing of said bottles toward said eastbound track occurred with such frequency and at such intervals before the plaintiff was injured; that the said agents and servants in charge of said train knew or, by the exercise of ordinary care, could have known of the throwing of said bottles, and that the persons throwing the same were drinking, carousing and acting in a disorderly

manner, and shall further find that the said.agents and serv-
ants of the defendant knew of said drinking, carousing, bot-
tle throwing and disturbances, or by the exercise of ordinary
care and caution could have known of said drinking, carous-
ing, bottle throwing and disturbances, for a sufficient time
before the accident to have prevented the throwing of the
bottles which caused the accident, if the jury find it was so
caused, and that on said return trip, when said train was
from thirty to forty-five minutes west of Washington, and
while said train was proceeding on the westbound track, that
the plaintiff was seated in the coach wherein said drinking,
carousing and throwing of bottles occurred, and that while
he was exercising due care and caution on his part, one of
said bottles was thrown from said car toward said eastbound
track and that the same struck a train passing on said track,
broke and that a piece of the same rebounded into the car
where the plaintiff was seated and struck him in the eye and
injured him, the plaintiff is entitled to recover, unless the
jury shall further find that the defendant company, its
agents and servants in charge of said train did not know of
the throwing of said bottles or by the exercise of ordinary
care, could not have known in time to have prevented the
throwing of the bottle which injured the plaintiff in the
time to have avoided the injury. (*Granted as modified.*)

*Plaintiff's 2nd Prayer.*—The plaintiff, by his counsel,
prays the Court to instruct the Jury, that if they shall find
from the evidence that the plaintiff on the eleventh day of
June, 1911, was a passenger on one of the excursion trains
of the defendant's company from Romney, West Virginia,
to the City of Washington, D. C., and return, and shall find
that the plaintiff left the said City of Washington on said
train about seven o'clock on the evening of said day, and
that he was seated in one of the coaches of said train near
the rear of said coach and on the left side of the same, and
that seated and congregated from three to six seats ahead of
him in the same coach were several other passengers of said
defendant company, and that said passengers had a box from

which they were taking bottles of beer and drinking the
same and were throwing the empty bottles through the win-
dows of said car toward the East bound track of the defend-
ant's railway, and, if they shall further find that during a
half to three quarters of an hour after said train left the
City of Washington, the said throwing of bottles toward the
said East bound track occurred frequently and that the
agents and servants of the defendant in charge of said train
knew of the throwing of said bottles, or, by the exercise of
ordinary care could have known of the same in time to have
prevented the injury herein complained of,. and that, at the
end of said period of thirty to forty-five minutes, a bottle
was thrown by one of said passengers who was drinking, as
aforesaid, through the window of said car, and that the same
struck a train passing on the East bound track of said rail-
way, broke, and a piece or pieces of the same rebounded into
the coach wherein the plaintiff was seated, and he was struck
in the eye and injured, and if they shall further find that the
defendant's agents and servants in charge of said passenger
train knew that other trains were passing or likely to pass
on said East bound track, and if they shall further find that
the plaintiff was using due care and caution on his part, then
their verdict must be for the plaintiff.   (*Granted.*)

*Plaintiff's 4th Prayer.*—The plaintiff, by his counsel,
prays the Court to instruct the jury that if they shall find
for the plaintiff that, in estimating the damages, they are
to consider the condition of the plaintiff's eye before the
injury complained of as compared with its present condi-
tion in consequence of the said injury, and whether the same
is in its nature permanent and to what extent, and also the
physical and mental suffering, if any, to which he was sub-
jected by reason of said injury, his loss of time and wages
due to said injury, the medical and surgical bills paid by
him, and to allow him such damages as, in the opinion of
the jury will be a fair and just compensation for the injury
which he has sustained.   (*Conceded.*)

*Defendant's 1st Prayer.*—The defendant, by its counsel, prays the Court to instruct the jury that there is no legally sufficient evidence in this case that the injury to the plaintiff was the direct and proximate result of the negligence of the defendant, and their verdict must be for the defendant. (*Rejected.*)

*Defendant's 2nd Prayer.*—The defendant, by its attorney, prays the Court to instruct the jury that the railroad company was not an insurer of the absolute safety of the plaintiff in this case, while on the train of the defendant, but the railroad company was only bound to use reasonable care according to the nature of the contract between the company and the plaintiff, while he was a passenger on defendant's train. (*Rejected.*)

*Defendant's 3rd Prayer.*—Defendant, by its counsel, prays the Court to instruct the jury, that the mere fact that plaintiff was injured while a passenger on the train of the defendant, does not impose any liability upon the defendant in this case, and that before they can find a verdict for the plaintiff, they must be convinced by a preponderance of the evidence that said injury was the direct and proximate result of some definite negligence upon the part of the defendant. (*Conceded.*)

*Defendant's 4th Prayer.*—The defendant, by its attorney, prays the Court to instruct the jury that if it finds from the evidence that the plaintiff purchased a ticket at Romney, in the State of West Virginia, from the defendant or its agent, and boarded the train of defendant on the morning of June 11, 1911, at Romney, West Virginia, with a ticket, by which defendant contracted to carry plaintiff on its excursion train of that date from Romney, West Virginia, to Washington, in the District of Columbia, and return, and that when the plaintiff, to return to Romney, West Virginia, boarded the train of the defendant in Washington, in the District of Columbia, he took a seat in a car of the defendant in a train on defendant's railroad, and while sitting in said seat on said train, some person in the same car or any other car, in

said train of said defendant, threw a glass bottle through an open window of said car, which was projected against a passing train on another track of the defendant's railroad, and broke, and that a particle of the broken glass of said bottle flew or was blown or projected into an open window of the car of said defendant, at and opposite to the seat in said car in which plaintiff was sitting, and riding as a passenger in said defendant's train, and that said particle of glass entered the eye of the plaintiff and cut and injured and impaired the sight thereof; yet the plaintiff cannot recover in this case unless the jury further believes that the agents or servants of the defendant knew or with the exercise of proper care could have known that such person or passenger in said car, was likely to or about to throw said bottle through the window of said car, a sufficient time in advance of the infliction of the injury upon the plaintiff to have enabled the agents or servants of the defendant to have prevented the throwing of said bottle, with the force or means at their command; and that the defendant was only bound to provide such a force of men to manage and conduct said train as was necessary for the ordinary demands of transportation, and not to provide against unusual and unanticipated action upon the part of any one who was a passenger in said train. (*Rejected.*)

*Defendant's 5th Prayer.*—The defendant, by its attorney, prays the Court to instruct the jury that even if they find from the evidence that there was beer in the possession of some of the passengers in the car in the train of the defendant in which the plaintiff was traveling as a passenger, and there was noise and loud talking and some profanity used by some of the passengers in said car and that some of said passengers were drinking beer in a seat or seats in said car further forward, than the seat in which plaintiff was sitting, and that some of said passengers had thrown bottles out of the open window in said car ahead of the window near which plaintiff sat, before the injury to the plaintiff, and that some one of said passengers just before the injury to plaintiff,

threw a glass bottle from a window in said car ahead of the window at which plaintiff sat, and that said bottle broke on a passing train, on another track of defendant's railroad, or on some object near to and outside of the said car of defendant, and a particle of the glass therefrom blew or was projected through the window of the car at the seat in which plaintiff was sitting, and entered the eye of the plaintiff and impaired the sight thereof, yet the plaintiff cannot recover a verdict in this case unless the jury further finds by a preponderance of evidence in this case, that the agents or servants of the defendant, saw or by the exercise of proper care might or could have seen the drinking passengers throw the glass bottles out of the windows near them in time to have interfered with the throwing of said bottles from said windows or to have made a reasonable effort to prevent the accident to the plaintiff, with the force at their command. (*Granted.*)

*Defendant's 6th Prayer.*—The defendant, by its counsel, prays the Court to instruct the jury, that if they believe from the evidence in this case that the injury to the plaintiff was the result of some misconduct by another passenger on the train of the defendant, which was so sudden and unanticipated that defendant's servants did not have time after knowing same to prevent said misconduct, then their verdict must be for the defendant. (*Rejected.*)

*Defendant's 7th Prayer.*—The defendant, by its attorney, prays the Court to instruct the jury that even if they find that the injury to plaintiff's eye was caused by its being pierced or cut by a particle of glass from a bottle thrown by a passenger on defendant's train through an open window of a car thereof, and that said bottle was thrown through said open window by a passenger who with others had been drinking beer in said car and throwing some of the empty beer bottles through the open window of said car, and had with others been talking loud and using profane language and was of a party that has been tussling with each other and doing other acts more or less rough in said car, before the

injury to the plaintiff, if they shall find any such acts; yet the plaintiff cannot recover in this case, unless the jury further belives from a preponderance of the evidence, that before the throwing through the open window of the bottle, a particle of the glass of which after being broken flew or was projected into another window of a car in the train of the defendant and into the eye of the plaintiff, the conductor, brakeman or other servant of the defendant anticipated or by proper care and caution could have anticipated that the drinking, profanity, tussling and previous throwing of bottles through the window, if they shall find any of said acts, were a notice to a reasonable man that such conduct would probably result in the throwing through said open window of the bottle, whose particle penetrated plaintiff's eye, long enough before said bottle was thrown through said window, to have enabled said conductor, brakeman or other servant of the defendant to prevent the throwing of said bottle, which caused the injury to plaintiff's eye.   (*Conceded.*)

*Defendant's 8th Prayer.*—The defendant, by its attorney, pray the Court to instruct the jury that before they can find a verdict for the plaintiff in this case they must believe from a preponderance of the evidence that the conductor, brakemen or other agent of the defendant saw, or by the use of proper care and caution, could have seen one of the passengers in defendant's car about to throw a bottle through the open window of said car before the injury to the plaintiff, and in time to prevent the throwing of said bottle; or that said conductor, brakeman or other agent of the defendant had seen, or by the exercise of proper care and caution could have seen one or more of its passengers in said car, before the injury to the plaintiff, throw a number of bottles through said window in time to have anticipated that said passenger or passengers would probably throw another bottle from said window or some window of said car, long enough before the throwing of said bottle and the injury to the plaintiff thereby to have enabled the conductor, brakeman or other agent of the defendant to have prevented said passenger

from throwing said last named bottle, which caused the injury to the plaintiff from said window. (*Conceded.*)

*Defendant's 9th Prayer.*—The defendant, by its counsel, prays the Court to instruct the jury, that if they find a verdict for the plaintiff, they may in assessing the damages, give the plaintiff such sum of money as they may believe from the evidence, he has lost by reason of the injury to his eye, as shown by the evidence in this case, together with such sums as they believe will compensate him for the pain arising from said injury, the sum or sums of money which he has expended for medical attention, and such other sum or sums as they may believe from the evidence will compensate him for such impairment of the vision of said injured eye as they may believe from the evidence has been caused by said injury.

Of which the third, seventh, eighth and ninth were conceded, the fifth granted and the first, second, fourth and sixth were rejected by the Court; to the granting of the first and second prayers of the plaintiff, and the rejection of the first, second, fourth and sixth prayers of the defendant by the Court, the defendant excepted, and prayed the Court to sign and seal this, defendant's fourth bill of exceptions, which is accordingly done this 30th day of November, in the year 1911. (*Conceded.*)

The cause was submitted on brief to Boyd, C. J., Briscoe, Pearce, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*George A. Pearre* filed a brief for the appellant.

*Bruce and Barnard, David A. Robb, D. L. Sloan* and *O. W. Richardson* filed a brief for the appellee.

Pearce, J., delivered the opinion of the Court.

This is defendant's appeal from a judgment rendered against it in the Circuit Court for Allegany County in an action brought by the plaintiff to recover damages for injuries received while a passenger on the defendant's railroad.

The first question arises upon a demurrer to the declaration, which was overruled.

After stating the relations of the parties on the occasion mentioned to be those of passenger and common carrier, from Washington towards Green Spring, W. Va., the declaration made the following averments: "Several of the passengers on said train, congregated together in several seats in front of the plaintiff, *were, and for a long time prior to the injury complained of, had been engaged in drinking, carousing, and acting in a disorderly manner,* to the disturbance of all persons in said car except those so engaged in drinking and carousing, *to such an extent that the safety of the plaintiff and other passengers in said car was endangered, and that said drinking and carousing was done with the knowledge and permission of the defendant's employees in charge of said train;* that said persons drinking as aforesaid had consumed many bottles of beer and whiskey to such an extent that they became drunken, *and were for a long time prior to the injury complained of, throwing said bottles from the car windows, towards the east-bound track of defendant's railway, upon which trains were passing or likely to pass, to the* knowledge of the defendant company, its servants *and agents, so as to be a menace to the safety of the plaintiff and other passengers:* * * * and that while drinking and acting as aforesaid, and after said passengers had been so drinking and acting, and throwing said bottles from the car windows for a long time prior to the injury complained of, one of said passengers, so congregated and drinking as aforesaid, *threw a beer bottle from the car window* towards the east-bound track of the defendant's railway, on which, to the knowledge of the defendant and its employees trains were passing or likely to pass the said train, which said drinking, carousing and throwing of bottles, the said defendant company, its agents and servants, knew, or by the exercise of ordinary care and caution could have known (but) made no effort to stop or prohibit; and *said bottle so thrown as aforesaid,* without the negligence of

the plaintiff, and while he was using due care and caution on his part, struck a train passing on said east-bound track and rebounded through the window of the seat in which the plaintiff was, and pieces of said bottle, which was broken when it struck said passing train, hit said plaintiff on the face, and grievously injured the eye of the plaintiff and otherwise bruised and cut him, which said injuries were then and there caused by the negligence of the said defendant company, its agents and servants, and could have been prevented by said defendant company, its agents and servants by the use of due care in providing proper and sufficient protection for the said plaintiff and other passengers on said train."

The contention of the appellant as to the insufficiency of this declaration, in the exact language of his brief, is (1) "that it does not allege that the defendant, or its employees, knew, or with the exercise of ordinary care and caution, could have known of the alleged drinking, disorderly conduct and the throwing of bottles from a window of the car, *long enough* before the injury to have prevented the throwing of the bottles, the broken piece of which is alleged to have entered the window of a car at which the plaintiff sat, and to have entered his eye and caused the injury complained of; and (2) because the declaration contains no allegation that the drinking, disorder and throwing of bottles out of the window as alleged, was of such a character as that the defendant or its employees had reason to *anticipate* that such an accident, or any accident from such cause, and consequent injury might occur."

In *P., B. & W. R. R.* v. *Allen,* 102 Md. 113, where the declaration was drawn in question under a demurrer to a plea, this Court speaking through CHIEF JUDGE McSHERRY, said: "It is the breach of the duty which is owed, that constitutes the cause of action. The particular circumstances which evidence that breach are not the breach itself, but are merely the facts which prove that a breach of the duty which was owed had occurred. In the structure of

pleadings, even in their strictest forms before the introduction of modern simplified systems, it was a most important principle of the law of pleading that although any particular fact might be the gist of a party's case and though the statement of it was indispensible, still in alleging the fact it was unnecessary to state such circumstances as merely tended to prove the truth of the fact alleged. The dry allegation of the fact, without detailing a variety of minute circumstances which constituted the evidence of it was sufficient. 1 *Chitty's Pl.,* 8 Amer. Ed., mar. p. 225. And this doctrine obtains today when much of the verbiage and nearly all of the technical precision once required in pleading has been abandoned. As only the facts constituting the cause of action need be stated, it is a cardinal rule that they must be averred or set forth with certainty, by which term is signified a clear and distinct statement of them so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the Court who are to give judgment. I *Chitty's Pl.,* 8 Amer. Ed., mar. p. 233."

Now the declaration before us might perhaps have been more concisely drawn, but if it complies with the requisites above stated, it cannot be condemned because of the style or order in which these requisites have been averred. Stripping it then, of the alleged repetition and confusion which the appellant claims "resulted in a paper *rudis indigestaque moles,* so confusing and vague as to render it almost impossible for the ordinary mind to grasp," and making a simple analysis of its language, it will be seen that it states that the defendant was a common carrier of passengers between certain named points on its road; that the plaintiff was a passenger on the day stated between said points; and it was then and there the duty of the defendant to carry the plaintiff safely to his destination; that the defendant and its employees *for a long time prior to the injury complained of,* knowingly permitted certain other passengers to indulge in

drinking and disorderly conduct, and to throw bottles of beer out of the car windows, thereby endangering the safety of other passengers; that one of the bottles so thrown out of said window struck a passing train, and broke, and a piece of said broken bottle rebounded, entered the window where plaintiff was sitting, in the exercise of due care, and cut and injured his eye, and finally that said injuries were caused by the negligence of the defendant and its employees, in permitting *for so long a time* said disorderly conduct, and that his injury could have been prevented by the defendant and its employees, by the use of due care in providing proper and sufficient protection for the plaintiff and other passengers on said train.

Taken together, these averments distinctly state a specific duty owed by the carrier to the passenger, viz, to protect him from known and obvious danger from the disorderly conduct of other passengers, and a breach of that duty, after knowledge of such disorderly conduct, by the negligent failure to control and suppress such disorder, whereby the plaintiff was injured.

The vice of the appellant's argument is that in order to state a good cause of action, the declaration should contain not only the specific allegation of the throwing of the particular bottle which caused the injury, but the further allegation that the intention to throw that particular bottle was foreseen, by the defendant's employees at the time of its commission, or could have been, by the exercise of due care, foreseen by them *long enough in advance* of the actual throwing of that bottle to have enabled them to prevent such throwing of it, and thus to have prevented the injury to the plaintiff. If this argument were sound, then defendants could have stood by during the whole time that it is alleged in the declaration these disorderly passengers were engaged in drinking and throwing bottles out of the window, without interposing, until they could see that the particular bottle about to be thrown was to be thrown in

such a manner or under such circumstances as were likely
to inflict some injury upon some one; or to carry the illustra-
tion further, but not beyond its logical limits, if, instead of
throwing bottles about, these parties had been handling
pistols in a careless and reckless manner, the defendant's
employees would have been under no obligation to interfere
until it was apparent some one was about actually to dis-
charge a pistol. It would not be rational to require knowl-
edge or means of knowledge of the particular act by which
injury might be inflicted. All that can be required is
knowledge or means of knowledge of such disorderly or
reckless conduct as is likely to result in injury *in some man-
ner* to others, if permitted to continue. The fact that the
bottle which caused this injury struck a passing train,
instead of striking some part of the window frame through
which it was thrown, does not at all affect the question.
The danger of striking something, and scattering broken
glass, was inherent in the reckless throwing of bottles
through the window, and the probability of striking the car
window was far greater than that of striking a passing train.

JUDGE McSHERRY, in discussing the liability of a carrier
to a passenger when intervening acts of fellow passengers
or strangers directly cause the injury sustained, said in *Tall*
v. *Steam Packet Co.,* 90 Md. 253: "The independent mis-
conduct of a third party, furnishes a ground of action against
the carrier only when the carrier, or his servants *could* have
prevented the injury, but failed to interfere to avert it;
* * * the negligence for which, in such cases, the carrier is
responsible, is not the tort of the fellow passenger or stranger,
but it is the negligent omission of the carrier's servants to
prevent that tort from being committed. The failure or
omission to prevent the commission of the tort, to be a negli-
gent failure or omission, must be a failure or an omission
to do something which could have been done by the servant;
and, therefore, there is involved the essential ingredient,
that the servant had knowledge, or with proper care could

have had knowledge that the tort was imminent, and that he had that knowledge, or had the opportunity to acquire it, sufficiently long in advance of its infliction to have prevented it with the force at his command." In that case, relied on by the appellant here, the affray was a sudden one, and the captain of the steamer interposed vigorously upon the first intimation of danger, but was unable to prevent the blow by one party and the immediate shot in reply, and hence the carrier was declared not liable, as the carrier was in the case of *Pittsburg & Fort Wayne R. R.* v. *Hinds,* 53 Pa. St. 512, also relied on by this appellant, where a mob unexpectedly boarded a train at a station, and the evidence showed it was impracticable for the conductor to keep them off, with the train force ordinarily adequate for the preservation of order. In *United Railways* v. *Deane,* 93 Md. 626, the Court said: "It will not do to say, after an assault has been made, that the servants of the carrier did not know or could not have foreseen that the particular individual who was assaulted, would be injured by an assault, if they were apprised, or with proper care, could have known, of circumstances which indicated that some one would (or might) be injured unless the disorderly passenger or stranger were ejected or controlled."

The declaration in the case before us distinctly alleges that the acts of disorder which finally resulted in the injury of the plaintiff were indulged in "for a long time prior to the injury complained of", and could have been prevented by the use of due care and by providing proper and sufficient protection for the passengers on the train. This averment, we think, is equivalent to an averment that the defendant's servants had the opportunity to know of the imminent danger impending, sufficiently long in advance to have averted it by interposing the authority with which they were vested over their passengers, so without further prolonging the discussion of that question we are of opinion the demurrer to the declaration was properly overruled.

There were two exceptions to the rulings on the evidence.

The plaintiff, on cross-examination, stated that he had made no complaint to any of the trainmen about the disorder, because he did not think it was his place and it did not occur to him that *he* would be injured. He was then asked why he thought it was the duty of the trainmen to interfere, and the plaintiff's objection to this question being sustained, the first exception was taken to this ruling. Any answer to this question would only have elicited the opinion of the witness, as to the legal obligation resting upon the defendant, and therefore would not have been properly admissible as evidence. The purpose of this question was not to impeach or discredit the witness, to disclose prejudice or bias, or to test his truthfulness or accuracy as to any *fact* in issue, but merely to elicit his opinion upon a matter of law, and we can discover no error in this ruling. When Mrs. Hamilton was on the stand she testified, on her direct examination, to seeing a number of persons drinking in the combination coach, and on being asked by plaintiff's counsel whether this was on the down trip in the morning, or the return trip in the evening, she answered before there was opportunity to object, that it was going down, and objection was then made to the allowance of that answer. The plaintiff then stated it would be shown that these conditions practically continued all the time on the down trip for such a length of time that they were or must have been known to the trainmen, whereupon the objection was overruled, and the second exception was taken.

It must be remembered that it appears from the evidence the parties who were drinking and throwing out bottles on the down trip, were the same who were engaged on the return trip, and their conduct in the morning before any actual injury resulted therefrom, threw light on what occurred from their continued conduct on the return trip, and bore materially upon the inquiry whether danger ought not to have been known to or anticipated by the defendant's servants by the repetition of such conduct.

We think this ruling was correct. At the close of the plaintiff's case, a prayer was offered that there was no legally sufficient evidence of negligence by the defendant which was the direct proximate cause of the injury to the plaintiff and their verdict must be for the defendant. This was rejected, but was renewed at the close of the whole case and was again rejected, so that it becomes necessary to examine the testimony in detail.

The plaintiff, a resident of Romney, West Virginia, testified that on June 11th, 1911, he was a passenger upon an excursion train from Romney to Washington, D. C., and return, leaving Romney between six and seven o'clock in the morning, arriving at Washington about the middle of the day, and leaving there on the return trip about seven o'clock in the evening.

He further testified that on the down trip he was in a combination baggage and passenger car, and the train was crowded. That there were a number of persons on that car who were drinking, and had a basket or box containing bottles of beer on ice, and which they replenished from time to time from a sack near the door, or on the platform, and that as the bottles were emptied they were thrown out of the door of the baggage car where the drinking was going on. The basket or box was refilled twice, to his knowledge, on the down trip.

On the return trip, the train was again crowded, and he got a seat in one of the passenger cars, and after he sat down he "saw this same crowd drinking and carrying on. They were pretty boisterous, and kept drinking, and were continually drinking until I was hurt. Somebody was drinking all the time, and they were throwing the bottles out of the windows, and tussling quite a bit." He was sitting on the left side of the car next to the east-bound track. The party engaged in drinking were ahead of him in the car; two seats were turned together and the beer was in a basket or box between the seats, and this was filled as before from time to time. As the bottles were emptied they were thrown

out of the car window.  This was done a number of times.
They would hold the bottles in their hands, take a drink,
after a while drink more, and throw the empty bottles from
the window.  They were swearing pretty loud, pulling one
another around, and using rough language not fit to be heard
by the women who were in the car.  He said "I seen the
party who threw the bottle out when I was hurt.  He got
up in his seat before he threw it, and I heard the bottle
when it struck the train, and something struck me in the
eye, just as it struck the train."  His eye was severely and
permanently injured, and he continued to suffer much pain,
and was disabled from business entirely for two and a half
months.  A trainman, either conductor or brakeman, came
through the train before he was injured and examined his
ticket, and he said there was no time before he was hurt,
that this drinking was not going on.

On cross-examination he said there were eight or ten in
that party occupying several seats ahead of him, and that as
near as he could tell he was hurt about half an hour after
leaving Washington; that he only knew one of the party by
name, Mr. Wilson, and he was not the one who threw the
bottle when he was hurt.  The window in his own seat was
up when he was hurt.  He did not complain to any of the
train crew of the disorder, and he did not think of being
injured.  He said at the same moment he saw the bottle
thrown and heard it strike, something struck and cut his
eye, but the pain was so severe at first he did not at once
realize what it was.  A freight train was passing and the
bottle struck one of the cars, and a piece of glass came through
the window and cut his eye.

Dr. Wilson, who treated his eye, testified that the cornea
or eye ball was cut through by some sharp substance, and
that in his opinion he would eventually lose that eye.

A. N. Clower, who was on the train, gave substantially
the same account of the drinking.  He stated he knew the
plaintiff, that he heard a crash like a bottle thrown from the
window, and Mrs. Hamilton said Mr. Rudy was struck in

the eye, and he looked and saw him holding his hand to his eye.

A. W. Heishman corroborated Clower, as to the constant drinking and throwing of bottles, but did not see the accident.

Mrs. Hamilton knew the plaintiff and occupied the same car with him both on the down trip and return trip, and saw the drinking and disorderly conduct on both occasions. Her testimony is more specific than that of any other witness to the accident and the circumstances that occasioned it. She was able to name three of the men engaged in drinking, on the down trip, and who were from near her home, in Petersburg, West Virginia. She said they had beer on the floor at their feet, and that she saw either the conductor or brakeman pass through the car while they were drinking, but she did not then notice any bottles thrown from the window or door of the combination car.

On the return trip in the passenger coach she knew Wilson and Carter as two of those engaged in drinking. Others whom she did not know were drinking with these men, and Wilson and Carter were trying to force a young couple near them to drink with them.

She saw Mr. Carter throw a bottle from the train, and said "That was the bottle that struck Mr. Rudy when he was hurt. I turned round in my seat facing my sister who was directly behind me, and I saw Mr. Carter get up on his feet and throw the bottle out of the window, and almost instantly I saw Mr. Rudy clap his hand over his eye and commenced to moan and groan and I knew he was hurt."

Asked whether a train was passing at that time, she replied "I can't say whether the train was moving or standing still, because *we* were going so fast I could not tell." She said however, expressly, that there was a train on the other track and that the bottle was thrown out on that side, and she heard a loud crush, as of broken glass.

On cross-examination she said she was sitting on the right-hand side of the car near the front, and Wilson and Carter

were several seats behind her on the same side of the car. Rudy was on the left side of the car further back than she was. When Carter threw the bottle she saw, he rose, went into the aisle, and threw it out on the left. She said she did not remember whether the conductor or brakeman was in that car at that time.

Grover Cline, who was on the excursion train, and during part of the time in the same car with plaintiff on the return trip, and just in front of him, testified that the conductor or brakeman came through the train before the accident; that he remembered this because there were four men standing at the door of the car in which his family was, drinking from a quart bottle of whiskey, and the train man came through, and took one of them by the shoulders, and shook him, and passed on, into the car. He knew him as a trainman by his uniform. The family of this witness was in the car behind, but he went back and forth from that car to the one in which plaintiff was. The accident occurred somewhere between Washington and Harpers Ferry.

Here the plaintiff rested and the defendant offered a prayer "that there was no legally sufficient evidence of negligence by the defendant in this case, which was the direct proximate cause of the injury to the plaintiff and their verdict must be for the defendant," which was rejected, and defendant then proceeded to offer its evidence.

Thomas Rogan, conductor of the train from Cumberland to Washington and return, testified that the train crew consisted of himself, brakeman Smith and flagman Light; besides, of course, the engineer and fireman. That on the return trip he commenced taking up and examining tickets on the front car, working back, and Smith did the same commencing on the rear car and they met about the middle of the train about near Gaithersburg, and about 35 to 40 minutes after leaving Washington, 23 miles from Gaithersburg. There were thirteen passenger coaches on the train, with about 800 passengers, that he saw no liquor of any kind on the train, and no drinking or disorderly conduct,

and heard no swearing or improper language used; that he did not know Mr. Rudy at that time, and heard nothing of any disorderly conduct or accident that evening.

On cross-examination he said the rear brakeman stayed on the rear car, when not flagging, and did not go through the train at all, and he himself staid on the front car when not taking up tickets, and that he went through the first seven coaches several times between Washington and Cumberland, but not once through the six rear coaches, which the brakeman attended to.

Brakeman Smith testified that he worked the rear end of the train taking up and examining tickets, and met the conductor about the seventh car near Gaithersburg, that he went twice that evening through the entire train and saw no one drinking and no throwing of bottles or disorder of any kind. The crowd was an orderly crowd. Was not on the train going down.

Mr. Light, the rear brakeman, was engaged in his duties, did not go through the train at all, and knew nothing material to the case.

John R. Carter testified that he lived at Romney, and was a conductor or engineman on the Hampshire Southern Railroad which runs south from the Baltimore and Ohio Railroad at Romney, but that he was a passenger that day from Romney to Baltimore and return; that Rudy was in the same car with him when he left Washington on the return, and that he knew him by sight but not by name at that time. When he saw him he was sitting on the left side of the car behind him, and heard him say to some one sitting alongside of him "something flew in the window and got in my eye." He denied Mrs. Hamilton's testimony that he threw a bottle out of the window, or that he was sitting on the right of the car. He said he had drank nothing that evening and saw no one drinking, or throwing bottles out of the window, or in possession of any bottles on the train, and that he did not then know who Mrs. Hamilton was, but knew later; that he did not know whether there were any

ladies in the car except one girl with three young men; that he did not see any one trying to induce them to drink and heard no swearing or rough language nor any disorderly conduct.

T. N. Marshall of Romney testified that on the return trip he passed through the car in which Rudy was three or four times; that he knew him, and that every time he passed through Rudy was in the same position, inclined in the seat with his arm over his head at the open window, and that the first time he noticed him they were near Boyds, and he knew nothing of any accident. He was apparently asleep. This witness saw no drinking or disorder of any kind.

Kenneth O. Wilson of Moorefield testified that he was on this excursion, and that a man named Beercamp had a case of beer containing about a dozen bottles, both going to and returning from Washington, and that *the last he saw of it* it was in a Hampshire Southern coach, the back coach, but there was no beer drunk at all in that car, or anywhere on the train so far as he saw or knew, and that he was all through the train; that he neither saw nor heard of any disorderly conduct and saw no bottles thrown out of the windows. He denied Mrs. Hamilton's statement that he tried to induce a young girl and her brother to drink with him, or that he saw any one make such an effort.

The above is a summary of all the material testimony, and includes that of all the witnesses except two for the defense. who were on the train, but saw no drinking or disorder.

It will be seen, without comment upon this testimony, that there was abundant evidence tending to sustain every averment of the *narr.*, and the conflict of testimony arising from the contradiction of plaintiff's witnesses by those of defendant, was necessarily for the jury. There was no error therefore in the rejection of defendant's first prayer.

The plaintiff offered four prayers, of which the Court granted the first and second; the third was withdrawn, and the fourth, the usual prayer on the measure of damages, was conceded.

The defendant offered in addition to the prayer withdrawing the case from the jury eight other prayers, of which the third, seventh, eighth and ninth were conceded; the fifth was granted, and the second, fourth and sixth were rejected.

In order that the rulings may be clearly understood, the reporter will set out in full all the prayers both granted and rejected, except those seeking to withdraw the case from the jury.

The plaintiff's first and second prayers embrace every principle necessary to his recovery as stated in *Tall* v. *Packet Co.* and *United Railways* v. *Deane, supra,* with due emphasis upon the essential ingredient that defendant's servants knew, or with proper care could have known, that the tort was imminent long enough in advance of its commission to have prevented it, and they were correctly granted.

Defendant's second prayer correctly states the isolated legal proposition that a carrier is not an insurer of the absolute safety of its passengers, but it lacks the qualification of the defendant's seventh prayer approved in *United Railways* v. *Deane,* 93 Md. 619, viz.: that it is liable to its passengers for torts or injuries inflicted by fellow passengers, when it could have prevented the injury with the force at its command, and without which qualification it would have been necessarily misleading.

Defendant's fourth prayer was properly rejected because it confined the jury to the consideration of the throwing of the particular bottle which inflicted the injury, and to the danger to Rudy, though the defendant's liability depended not on the throwing of *that bottle* alone, nor on the danger to *Rudy,* but upon the general misconduct of his fellow passengers and the fact that *any one* was put in peril by their failure to control or suppress the disorderly conduct. *Deane's case, supra,* 628. The defendant's sixth prayer was objectionable for the same reasons as the fourth, that it practically limits the inquiry of the jury to the circumstances of the throwing of the one bottle which caused the plaintiff's injury. True, it does not impose this limitation in express words,

but it none the less directed the mind of the jury to that *one isolated act of misconduct,* and ignored all the other preceding acts of misconduct, which should have warned defendant's servants of the impending danger which actually resulted from failure to observe this warning.

The cases are numerous elsewhere, sustaining the liability of the carrier in cases like that now before us.

In *Flint* v. *Norwich and N. Y. Transportation Co.,* 7 Blachf. U. S. Circuit Court for Connecticut, JUDGE SHIPMAN said: "The defendants were bound to exercise the utmost vigilance and care in maintaining order and guarding the passengers against violence, *from whatever source arising,* which might reasonably be anticipated, or naturally be expected to occur in view of all the circumstances and of the number and character of persons on board. Some of the soldiers were boisterous, intoxicated, and more or less disposed to rudeness, and this was observed from a quarter to half an hour before the accident, without any action on the part of the company."

In *Kinney* v. *L. & N. R. R.,* 99 Ky. 60, the Court said, "the rule in Flint's case was recognized in an almost unbroken line of decisions in this country," and in *West Memphis Packet Co.* v. *White,* 38 L. R. A. 427, that is declared to be the leading case in America on that subject.

In *Pittsburgh & Con'ns. R. R.* v. *Pillow,* 76 Pa. St. 510, a case of injury from the throwing of a bottle by a passenger, the Court said: "The employees have power over passengers and are as much responsible for the exercise of that power as for proper running of the train. This doctrine is wise and good, and necessary for the protection of travelers."

In *Stewart* v. *Brooklyn and Crosstown R. R. Co.,* 90 N. Y. 588, it is said: "Drunken men should not be permitted on the cars, or should be so guarded or separated from the orderly passengers as to prevent injury from them."

In *Simmons* v. *New Bedford S. B. Co.,* 97 Mass. 361, JUDGE GRAY said: "The carrier is as much bound to guard

against the results of acts of third parties as of any other cause, the operation of which he can reasonably anticipate. * * * They have power to make reasonable regulations as to the places which passengers may occupy, and as to their conduct while on board, and they are bound to use the utmost skill and care of prudent men in taking precautions to prevent any passenger from being injured by the negligent or reckless acts of other passengers."

After a careful consideration of this record, and a carefull examination of the authorities, we think the case was fully and fairly submitted to the jury under the instructions of the Court and the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*