## PENNSYLVANIA RAILROAD CO. *v.* CHARLES L. COOK

[No. 36, April Term, 1942.]

634

Decided May 27, 1942.

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, FORSYTHE, and MARBURY, JJ.

*O. Bowie Duckett, Jr.*, with whom was *Edward E. Hargest, Jr.*, on the brief, for the appellant.

*Paul Berman*, with whom were *Philip V. Hendelberg* and *Eugene A. Alexander, III*, on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee, Charles L. Cook, against the appellant, the Pennsylvania Railroad Company, for personal injuries sustained on February 28, 1941, while the appellee was leaving a passenger coach at the Biddle Street Station in Baltimore City.

The case was tried before a jury, and at the conclusion of all of the testimony, the appellant offered a prayer to withdraw the case from the jury on the ground that no evidence had been offered legally sufficient to show that the appellant, or any of its agents, had been guilty of any negligence in the operation of its train. That prayer was refused.

From all of the evidence in the case, and it is undisputed, the appellee was a regular commuter on a train operated by the appellant company going to and returning from Edgewood Arsenal, a short distance out of Baltimore.

On the evening the appellee was injured, the train made the usual stop at the Biddle Street Station, and the appellee left his seat and while descending the steps of the coach the train suddenly started and he was thrown about eight feet down an embankment. The appellee had a "grip" in his hand and was not holding to the hand rail. The train was made up of four or five coaches, and it usually required two or three minutes for the passengers to leave the train at that station. But on the evening of the accident the train started to move about one-half of a minute after it had stopped. It was the sudden movement of the train, while the appellee was descending the steps that caused him to fall.

The crew of the train was composed of five men, the conductor, baggage-master, flagman, brakeman and the engineer. When the train first stopped the brakeman was on the platform of the car, between the first and second coaches, the conductor and flagman were on the station platform, the baggage-master was in the baggage-coach, and the engineer was at the throttle of the engine, or motor.

As the first passengers, one of whom was the appellee, started to leave the train, the signal of two blasts from the whistle was sounded, and the train immediately started forward. The flagman testified when he heard the two blasts of the whistle, which he knew was the starting signal, he immediately ran up the steps and pulled the signal to stop, and the train did immediately stop. The conductor said as soon as he heard the starting signal given, he attempted to give a signal to stop, but one of the other members of his crew gave it before he could reach the signal cord.

There is no dispute about the fact that the appellee was caused to fall by reason of the sudden starting of

the train, and that the signal was given before all of the passengers had left the train.

Only one witness was able to give any information about the premature sounding of the starting signal. He said he saw a fellow passenger "deliberately pull the cord to go ahead," and then hurry from the train. That evidence also is not contradicted. Nor is there any contradiction of the evidence that two blasts of the whistle is the proper and universally accepted signal used by railroads to start a train after a stop to discharge passengers.

Since all of the facts concerning the cause of the injury to the appellee, and how it occurred are conceded, the question is whether any of the employees of the appellant were guilty of any acts of negligence in starting the train. The universally accepted rule of law in reference to liability of a carrier of passengers for injury to a passenger caused by the unauthorized and unanticipated act of a fellow passenger in giving a signal to start a train is stated in 10 *Am. Jur., Carriers,* Sec. 1441, p. 259, as follows: "A carrier is liable for acts of misconduct or improper conduct on the part of its passengers or strangers resulting in injury to a fellow passenger only in the event that the employees of the carrier knew or, in the exercise of due care, should have known of the imminency of the tort and failed to prevent the occurrence after a sufficient opportunity to do so * * * The rule is applied and the carrier held immune from liability where a person boarding or alighting from the carrier's vehicle is injured by the premature starting thereof on a signal by an unauthorized person; provided, of course, that the ensuing accident is not preventable by the exercise of due care on the part of the carrier after the giving of the signal. * * * The general principle often stated is that a carrier is not bound to anticipate that a passenger will intentionally meddle or interfere with the machinery of the car or train and that if he does, he thereby becomes a trespasser, for whose acts the carrier is not liable, in the absence of

any negligence on its part." 10 *C. J., Carriers,* Sec. 1333, p. 902; 4 *R. C. L., Carriers,* Sec. 611, p. 1189; *Sure v. Milwaukee E. R. & L. Co.,* 148 Wis. 1, 133 N. W. 1098, 37 *L. R. A. (N. S.)* 724, *Ann. Cas.* 1913A, 1074; 13 *C. J. S., Carriers,* Sec. 695, p. 1296; *North Chicago St. Ry. Co. v. Cook,* 145 Ill. 551, 33 N. E. 958; *Moore v. Woonsocket Street Ry. Co.,* 27 R. I. 450, 63 A. 313, 114 *Am. St. Rep.* 59; *Fanshaw v. Norfolk & Portsmouth Traction Co.,* 108 Va. 300, 61 S. E. 790; *Tall v. Baltimore Steam Packet Co.,* 90 Md. 248, 253, 44 A. 1007, 47 *L. R. A.* 120; *Hagerstown & F. Railway Co. v. State,* 129 Md. 318, 99 A. 376; *Baltimore & Ohio R. Co. v. Rudy,* 118 Md. 42, 84 A. 241; *Pugh v. Washington Ry. & E. Co.,* 138 Md. 226, 113 A. 732. In the declaration in this case the only charge of negligence is that "the defendant corporation, through its agent, servant or employee, so negligently managed said train in that it caused to start suddenly, prematurely and without warning to the plaintiff, causing him to lose his balance and fall, &c." There is no charge of negligence in failing to stop the train after its premature start, and since it virtually is conceded that no employee of the appellant, had any part in giving the signal to start, it becomes a question only of whether the engineer was negligent in obeying the proper signal to go forward.

It appears that the engineer was an "extra," taking the place of the regular engineer, and was not familiar with the length of time required to discharge passengers at the Biddle Street Station. And for that reason, it was argued, he should have assured himself that it was safe to start the train, regardless of the fact he had received the proper signal to go forward.

No authorities have been cited, nor have we been able to find any, holding that it is a duty of an engineer to investigate for himself whether or not a signal given him should be obeyed or disregarded. Surely it does not need the citation of authorities to sustain the statement that it is the imperative duty of an engineer, at all times, faithfully to obey every signal employed in

the operation of railroad trains. He would be grossly negligent if he neglected to do so. It is appalling to contemplate the consequences of an engineer's failure to obey proper signals. The lives of passengers depend entirely upon strict observance of and obedience to all rules regulating the movements of railroad trains. The engineer has no right to assume that a signal, when it is one in universal use, has been improperly given, or has been given by one without authority. Definitely, it is not the duty of an engineer to leave his post to investigate the correctness of a signal. Indeed, it would be an act of negligence for him to do so. In this case there is no evidence of any extraordinary circumstance which would excuse an engineer in leaving his engine, or motor. The train carried its full crew, and one of the duties of the conductor was to direct the stopping and starting of the train. The engineer had a perfect right to rely upon the conductor for directions in starting and stopping the train.

There was no negligence on the part of the appellant in permitting an "extra" engineer to operate this particular train. The evidence is uncontradicted he was a regular, and competent, engineer. The mere fact he may not have been familiar with the usual length of time required for stops at various stations does not amount to negligence, because, as above stated, it was not his duty to determine that, but only to obey proper signals.

Any question of negligence in regard to stopping the train after the appellee had been thrown off, cannot enter this case. The charge is not that the injury to the appellee was caused by the train moving after he was thrown off. He was not run over, or dragged. Nothing that happened after the appellee was thrown off the train can determine the question of negligence in starting the train. The negligence alleged and the injury sued for must bear the relation of cause and effect. *Smith Co. v. Smick,* 119 Md. 279, 86 A. 500; *Merchants' & Miners' Transportation Co. v. Hazelton,* 108 Md. 564, 567, 70 A. 413.

In this case there is no evidence that the conductor, or any other member of the crew, had any reason to anticipate that one of the passengers would give the signal to start the train. The conductor and flagman were on the station platform, the usual place to assist passengers when getting off the train. The brakeman was on the coach platform for the same purpose. Nothing unusual had occurred which necessitated any member of the crew remaining on the train to keep passengers in order. The evidence does not disclose that any member of the crew, by the exercise of due care and diligence could have countermanded the unauthorized signal in time to prevent the moving of the train, and thereby avoid the injury to the appellee. Under all the evidence we find no act, either of commission or omission, on the part of any of the employees of the appellant for which it can be held liable in this case.

The act of the person who gave the signal is a misdemeanor, Code, 1939, Art. 27, Sec. 539, for which the appellant, under the circumstances, is not liable.

While negligence ordinarily is one of fact, and not of law, cases do occur in which the undisputed facts do not sustain a charge of negligence and it then becomes the duty of the court to withdraw them from the consideration of a jury. *Merchants' & Miners' Transportation Co. v., Hazelton, supra.*

For the refusal to grant appellant's A prayer the judgment must be reversed.

> *Judgment reversed, without a new trial.*
> *Costs to be paid by the appellee.*

DELAPLAINE, J., dissenting.